Thompson *v.* Bower.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, September 4, 1871. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]

—————•••—————

WILLIAM THOMPSON and CALVIN THOMPSON, survivors, &c., *vs.* MICHAEL J. BOWER.

To enable a party to maintain an action for use and occupation, under the provision of the Revised Statutes authorizing such an action to be brought under any agreement, whether by deed or parol, the conventional relation of landlord and tenant must exist.

Unless that relation exists between parties, there is no implied promise or obligation to pay for use and occupation.

Where one occupies under an agreement to purchase, he is not a tenant, but a vendee, and the relation that of vendor and vendee, and in no conventional sense that of landlord and tenant.

Distinction between the action for *mesne* profits and the action for use and occupation.

Where the relation of landlord and tenant did not exist, and there had been neither a tortious entry, nor a tortious holding, by the defendant, who went into possession by virtue of a parol agreement with the plaintiffs to purchase, and had been willing to pay substantially according to the agreement, and had quitted the premises because the plaintiffs refused to allow him to

perform his agreement, or to accept performance on his part; *Held* that the plaintiffs could not recover for the use of the premises; whether the action was to be regarded as an action for use and occupation, or an action for *mesne* profits.

*Held, also,* that it was erroneous for the judge to charge the jury that the agreement under which the defendant entered, for the purchase of the land, being void, the plaintiffs were entitled to recover the fair value of the use of the premises.

APPEAL, by the defendant, from a judgment of the county court of Allegany county. The action was brought to recover for the use and occupation of land, and was originally commenced in a justice's court.

In the month of March, 1863, the original plaintiffs, Edward Thompson, William Thompson and Calvin Thompson, entered into a verbal contract with the defendant to sell to him about 32 acres of land in Ward, Allegany county, N. Y., at $14 per acre, he to have possession and pay the taxes, and as the plaintiffs claimed, pay a handsome payment down, the first year, and the interest annually on the whole sum, no time being specified for the payment of the principal. As the defendant claimed, he was not to make any payment the first year, except his boy's work, but was to have six years in which to pay the principal and interest, when and in such sums as he could. The defendant went into possession and occupied under this contract until the spring of 1867, and made permanent improvements to the amount of about $50, and paid the taxes, amounting to over $40. The plaintiffs gave him no writing to show the purchase, and, as the defendant claims, would give him none, though frequently requested by him to do so.

The defendant's minor son worked for the plaintiffs the first season, from May 1st to July 29th, by agreement to be applied on this land, at $8 per month. In October, 1865, the defendant also paid the plaintiffs $50 to apply on the land. There being no written contract on which these payments could be indorsed, and no receipts there-

Thompson *v.* Bower.

for being given, these items were charged in the defendant's book account with the plaintiffs; and on a settlement of the book accounts in the spring of 1866, these items were reckoned in, without anything being said by either party as to their applying on the land, or otherwise. The defendant, in the spring of 1864, and also in 1866, gave the plaintiffs money to apply on the land, and at the same time handed to them, and tried to get them to sign, contract receipts that such money was to apply on this land, but they refused to sign them. On their subsequently asking him for money on the land, he refused to pay any more money on the land, unless they would give him some writing to show for it, which they refused to do, and shortly thereafter, and in the spring of 1867, ordered the defendant to leave the premises, which he accordingly did, and demanded and received back from the plaintiffs the money paid, with interest.

In the fall of 1867 the plaintiffs commenced this action against him, by the usual summons in a justice's court, in the town of Ward, Allegany county. The complaint alleged, 1st. That in or about the month of March, 1863, the plaintiffs were the owners and possessed of about 40 acres of land in the town of Ward, in the county of Allegany, off from the west side and north end of the Bailey farm, so called. That on or about the month of March aforesaid, the defendant, by the consent and permission of the plaintiffs, entered into the occupation and possession of said land, and used, occupied and enjoyed the same, and had and received the use and profits thereof, for the term of four years and two months then next ensuing, which use and profits was of the value of $150, whereby an action had accrued to the plaintiffs to demand and have of and from the defendant the said sum of $150.

2d. And for a second and other cause of action, the plaintiffs alleged that in or about the month of March

1863, being the owners of and possessed of a certain other parcel of land, partly improved, of about 40 acres, situated in Ward, Allegany, bounded, &c., they entered into a verbal agreement with the defendant, by which they agreed to sell said land to him, who agreed to purchase the same at the sum of $14 per acre, $100 of which was to be paid down or in the course of the season, and the remainder within a reasonable time. That upon making said agreement, the defendant, by consent and permission of the plaintiffs, entered into the possession and occupation of said land, and for the period of four years and six months, then next ensuing, remained in possession and occupancy of said land, and received to his own use the benefit and profits thereof, of the value of $150, and at the end of said period quit the possession of the same, without having made any payments to the plaintiffs, either to apply on said contract or for said use, to the damage of the plaintiffs of $200.

3d. Also, that in the spring of 1863 they entered into an agreement with the defendant, by which the defendant agreed that his (defendant's) minor son, James M. Bower, should work for the plaintiffs from the 1st of May, 1863, until the next winter, if the plaintiffs wanted him so long, for which the plaintiffs were to pay $8 per month. That said James M. Bower commenced work under said agreement May 1st, 1863, and, with the plaintiffs' consent, quit July 29th of same year. That the work of said James would have been worth to the plaintiffs $13 per month, and they alleged that they had sustained damages in the sum of $25 by said breach of said agreement. Also, they claimed the sum of $3 for over payment for said work, and claimed judgment for $200.

The defendant demurred to the first and second counts of the complaint, as not stating facts sufficient to constitute a cause of action, and that the said counts or causes of action were inconsistent with each other.

In the justice's court, the action was twice tried by jury, the first trial resulting in a disagreement of the jury, the second trial in a verdict of no cause of action. The plaintiffs appealed to the county court. Pending the appeal, the plaintiff Edward Thompson died, and the action was continued in the names of the other plaintiffs, as his survivors.

The cause was tried at the January term of the Allegany county court, in 1871. The plaintiffs made no claim to recover under the third count of the complaint. When they rested their case, the defendant, by his counsel, moved that the plaintiffs be nonsuited on the first and second counts of the complaint, on the following grounds: 1st. That they had not proved facts constituting a cause of action under those counts. 2d. That the evidence proved an agreement to purchase the premises in question, and defeated the plaintiffs' claim under those counts.

A motion was also in like manner, and on the same grounds, made that the plaintiffs be nonsuited on the first count in the complaint. Both motions were denied by the court, and the defendant excepted.

When the defendant rested his case, the court charged the jury that the agreement for the purchase and sale of the land in question being void, the plaintiffs were entitled to recover the fair value of the use of the premises. To which charge the defendant, by his counsel, excepted. The defendant, by his counsel, requested the court to charge the following propositions: 1st. That if the jury should find that the non-performance of the contract for the sale of the premises in question was owing to the fault, default or wrong of the plaintiffs, they were not entitled to recover for their use and occupation by the defendant. 2d. If the defendant entered into possession of the premises and occupied under an agreement to purchase, the plaintiffs were not entitled to recover in this action, for his use and occupation of said premises.

To the first and second requests to charge, the court

refused to charge as requested, in each case, and the defendant duly excepted in each case.

The plaintiffs had a verdict, in the county court, for $50.

On the trial before the justice, as also in the county court, the demurrer was overruled.

*Rufus Scott,* for the appellant.

I. The plaintiffs' counsel has been unable, thus far, to give this action a name or denominstion, or to inform us whether the action is for a tort, or upon contract. The most that he has undertaken to say is; that it is not an action for use and occupation, and as the best thing he can do, he inclines to think it may be an action for rents and profits. This is manifestly an attempt to create a distinction without a difference. The complaint and proof of damages clearly show it to be intended for an action for the use and occupation of these premises by the defendant, and it must be either for their wrongful and unlawful use and occupation, and so in tort, or for their rightful and lawful use and occupation, and so upon contract. The complaint contains no allegation that the defendant wrongfully or unlawfully, or without leave, entered upon, occupied or withheld the premises. On the contrary, it distinctly and in terms alleges it to have been by the consent and permission of the plaintiffs. No unlawful act or omission is alleged against the defendant. That the plaintiffs intended it for an action upon contract is shown also by the fact of the joinder with the 3d count—a count upon contract. Had the first two counts not been treated as upon contract, the complaint would have been demurable as joining actions for tort with an action upon contract. The question put to the plaintiffs' witnesses, "what was the fair value of the use of the premises," &c., also determines it to be intended as an action upon contract, and an action for the use of the premises. The first count is certainly upon contract, but it states no cause of action.

It does not aver that the defendant's use and occupation was at his request, or that he expressly or impliedly agreed to pay therefor, or any fact showing that he did. It does not aver that the demand is due. It does not allege that the defendant is indebted. It does not allege that the premises were leased or demised to the defendant, nor any fact showing indebtedness or legal obligation to pay. It only alleges an executed gift, a gratuitous use and occupation, and a license; and is not good within the cases of *Freeman* v. *Freeman*, (51 *Barb.* 306;) *Mann* v. *Morewood*, (5 *Sandf.* 558;) *Glenny* v. *Hitchins*, (4 *How.* 98;) *Allen* v. *Patterson*, (7 *N. Y.* 476;) *Beekman* v. *Platner*, (15 *Barb.* 550;) *Lienan* v. *Lincoln*, (2 *Duer*, 670;) *Eno* v. *Woodworth*, (4 *N. Y.* 249;) *Garvey* v. *Fowler*, (4 *Sandf.* 667;) 1 *Van Sant. Pleadings*, *pp.* 250 *to* 275; *Pierrepont* v. *Barnard*, (6 *N. Y.* 298;) *Pratt* v. *Ogden*, (34 *id.* 20.) The second count states no cause of action. Whether it be intended to be upon contract or for a tort, it should aver that the defendant quit the possession without right and without the fault of the plaintiffs. It should aver that the defendant never tendered payment on the contract; or, at the very least, it should aver that the plaintiffs had duly performed the said contract on their part. For aught that is alleged, the defendant quit rightfully, and with the consent of the plaintiffs. For aught that is alleged, the defendant tendered the plaintiffs the full amount of the contract price for the land, and they refused to receive it. It should show or allege a performance, or offer or tender of performance, of the contract on their part, and a wrongful and unlawful refusal to perform on the part of the defendant, which would turn him into a trespasser *ab initio;* but in its present form it wholly fails to do so, because it fails to allege the fact, or allege facts showing, that the defendant unlawfully or without leave entered upon, occupied or withheld the premises, but alleges the reverse. The rule is familiar, that in all cases the plaintiff must allege

the facts showing the default or tort or wrong of the defendant. Under the Revised Statutes, (*vol.* 3, *p.* 597, *5th ed.*,) after the defendant's wrongful possession had been established by a recovery in ejectment, the plaintiff, by suggestion in the form substantially of a declaration for use and occupation, might recover his damages, which was to be entered and attached to the judgment as a continuation of the same. But this could only be done after the defendant's wrongful and unlawful entry and possession had been established by the recovery in ejectment. This is not the case of such a suggestion, and it certainly is necessary to allege the wrongful entry and possession of the defendant in the original action for these damages, and that the plaintiffs have re-entered and are now in possession. (*See* 1 *Barb.* 177 ; 38 *id.* 9.) When the pleading is uncertain and ambiguous, it will be construed most strongly against the party using it. (12 *How.* 212. 15 *id.* 221. 11 *Abb.* 213. 28 *Barb.* 75. *Code,* § 243.)

Would it not be a little absurd to say that under this complaint a body execution could issue on the judgment in this case. But we submit that this count is intended to be a count upon contract, since it makes no averments of the defendant's wrong, or of facts imputing wrong, and for the reasons as stated. The allegation of the first count is, "that the defendant, by the consent and permission of the plaintiffs, entered into the occupation and possession of said land, and used, occupied and enjoyed the same, and had and received the use and profits thereof." The allegation of the second count is, that the defendant, by the consent and permission of the plaintiffs, entered into the possession and occupation of said land, and remained in the possession and occupancy of said land and received to his own use the benefits and profits thereof. Its joinder with the first and third counts, both upon contract, show it to be intended to be upon contract; and if intended to be upon contract it can only be for the use and

Thompson *v.* Bower.

occupation of the premises by the defendant. It cannot be for a breach of the contract, for the contract alleged is not one for the breach of which an action can be maintained, and it certainly is not to enforce the contract. It must, therefore, be upon the defendant's implied agreement to pay for the use and occupation of the premises. But here an express agreement and a license to enter and occupy is alleged, and no other or different agreement can be implied. An express agreement excludes and leaves no room for an implied agreement. But the express agreement and license to enter and occupy, alleged in this count, is fatal to a recovery for the use and occupation of the premises. (*Smith* v. *Stewart*, 6 *John.* 45. *Bancroft* v. *Wardwell*, 13 *id.* 489. *Pierce* v. *Pierce*, 25 *Barb.* 243. *Sylvester* v. *Ralston*, 31 *id.* 286. *Coit* v. *Planer*, 4 *Abb. N. S.* 140. *Croswell* v. *Crane*, 7 *Barb.* 191. *Wood* v. *Wilcox*, 1 *Denio*, 37. *Fletcher* v. *Button*, 4 *N. Y.* 399. *Mooers* v. *Wait*, 3 *Wend.* 104. *Suffern* v. *Townsend*, 9 *John.* 35. *Cooper* v. *Stower*, *Id.* 331, *and the cases cited supra.*) The demurrer, therefore, should have been sustained.

II. So much upon the pleadings. Upon the trial, the plaintiffs proved an agreement to purchase the premises, and the defendant's entry and occupation under that agreement, and no other, and with the license and consent of the plaintiffs. No written contract was shown to have been made or tendered by them prior to the defendant's quitting possession, and their own proof was that they refused to sign or deliver to the defendant, receipts for money paid by him to apply on the land. They proved no refusal on the part of the defendant to perform the contract, or to pay them money, if they would give him receipts for it. On the contrary, they proved on their part that he paid them money on the land, despite their refusal to sign such receipts. And that the plaintiffs directed him to quit the possession, which he did, and the value of the use and occupation of the premises, and rested their

case. Upon this evidence the motion for a nonsuit should have been granted, within all the cases. (*See Smith* v. *Stewart,* 6 *John.* 45; *Bancroft* v. *Wardwell,* 13 *id.* 489; *Pierce* v. *Pierce,* 25 *Barb.* 243; *Sylvester* v. *Ralston,* 31 *id.* 286; *Coit* v. *Planer,* 4 *Abb. N. S.* 140; *Croswell* v. *Crane,* 7 *Barb.* 191; *Wood* v. *Wilcox,* 1 *Denio,* 39; *Fletcher* v. *Button,* 4 *N. Y.* 399; *Mooers* v. *Wait,* 3 *Wend.* 104; *.Pierrepont* v. *Barnard,* 6 *N. Y.* 290; *Van Deusen* v. *Young,* 29 *id.* 9; *Pratt* v. *Ogden,* 34 *id.* 20; *Harris* v. *Frink,* 2 *Lansing,* 36.) These cases cover the period before and since the Code, and embrace all the courts of the State, and are decided not upon the technical form of action, but upon the facts within this case, and uniformly hold the rule of *Smith* v. *Stewart,* cited above, regardless of the abolition of the forms of action. No claim having been made to recover under the third count of the complaint, and no proof offered, this would have disposed of the case.

III. The defendant's proof confirmed the plaintiffs, as to payments of money &c. on the land, and their refusal to give him receipts therefor, and further showed that the reason why no more money was paid was because of the plaintiffs' distinct refusal to give him any writing for it; and because he would not, they directed him to quit, which he did. He also testified that he was to have six years to pay for the land, which was not disputed by the plaintiffs. In view of all this proof, it is plain that the plaintiffs were determined, from the first, not to give the defendant any writing for this land, or for money paid by him on it, and to put themselves in a position where they could turn either way, as their interest dictated—carry out the contract if they could do no better, or repudiate it as they did, if the land increased in value and they could get more for it. It may be claimed that the plaintiffs offered to carry out the contract in the spring of 1867, by offering to convey the land to the defendant if he would then pay the purchase price and interest in cash. But that is not so.

Thompson *v.* Bower.

The defendant says that he was to have six years to pay for the land. He is not disputed by the plaintiffs. The purchase money then was not due until 1869. Their offer required him to pay it at once, in the spring of 1867. They probably knew that he could not raise the money at once, and took advantage of the fact to press him to the wall. It is very far from showing an offer to carry out the agreement. Besides, they then had $125 of the defendant's money in their hands, delivered to them to apply on this land, which they had held for nearly a year. The offer required interest to be paid on the whole, including this.

We submit, also, that the defendant had repeatedly made payments on this land, and offered to do so when the plaintiffs would not receive them. The boy's labor from May 1st to July 29th, 1863, was a payment upon the land, as also the $50 paid in October, 1865, and was so accepted and considered until the settlement in the spring of 1866. Of course the defendant could do no less than charge these items in his book account, since he had no receipt for them, and there was no contract on which they could be indorsed. On the settlement of those book accounts his only safety was to include these items, or run the risk of the plaintiffs afterwards defeating his claim for them on the plea of settlement. They were three to one against him, and he had nothing to show that these items were not properly part of his book account. Had they given him receipts for them, or a contract for the land on which they could have been indorsed, as it was their duty to do, these items would have continued as payments.

The court will observe that the plaintiffs never objected or refused to receive money upon this land when they could get it without giving any writing to show for it; and that they uniformly refused to receive money on this land when they were requested, or required, to give such a writing. There is no default on the defendant's part,

for he was not bound to pay unless a written contract was made, or some writing was given him by the plaintiffs to show the payment upon this land. The first money tendered by the defendant, April 6, 1864, was refused by the plaintiffs. They, therefore, waived the payments according to the terms of the agreement, as they swear to it. The aggregate of payments made by the defendant as payments, or tendered as such, is $250, which would have been applied on this land but for the conduct and fault of the plaintiffs in refusing to give a contract or receipt. But the defendant testified that he was to have six years to pay for the land. This was not disputed by the plaintiffs; so that in that case, clearly, there was no default of the defendant. At least the question of who was in the fault, default, or wrong, for the non-performance of the agreement for sale of the land, should have been submitted to the jury, which was refused. (*Van Deusen* v. *Young*, 29 *N. Y.* 9 *to* 38. 29 *Barb.* 9.)

IV. The question to the plaintiffs' witnesses, "what was the fair value of the use of the premises," was improperly allowed. The only damages that could be recovered, were the damages to the reversion—the injury to the premises by the acts complained of. (*Van Deusen* v. *Young*, 29 *Barb.* 9. 29 *N. Y.* 9. *Morehouse* v. *Matthews*, 2 *id.* 514. *Harger* v. *Edmonds*, 4 *Barb.* 256. *Fish* v. *Dodge*, 4 *Denio*, 312. *Norman* v. *Wells*, 17 *Wend.* 136.)

V. A license and consent to enter and occupy is alleged and proved by the plaintiffs, and undisputed, and is fatal to the recovery in this case. (*Mooers* v. *Wait*, 3 *Wend.* 104. *Suffern* v. *Townsend*, 9 *John.* 35. *Cooper* v. *Stower*, *Id.* 331. *Pierrepont* v. *Barnard*, 6 *N. Y.* 298 *to* 304. *Pratt* v. *Ogden*, 34 *id.* 20 *to* 23. *Van Deusen* v. *Young*, *supra.* *Walter* v. *Post*, 4 *Abb.* 382. *Dolittle* v. *Eddy*, 7 *Barb.* 74.)

VI. The charge of the court, unconditional and unqualified, that the agreement being void, the plaintiffs were entitled to recover the fair value of the use of the

premises, was error. (*Van Deusen* v. *Young*, 29 *Barb.* 9
29 *N. Y.* 9.)

*Angel & Jones*, for the repondents.

I. There was no time after the 1st of April, 1864, when
the plaintiffs could not have brought and maintained eject-
ment, and recovered possession of the premises, even
though the contract had been in writing, and possession
given to the defendant. He was to make a handsome pay-
ment the first season, and pay the interest upon the pur-
chase price, annually, in both of which he failed. If it is
contended that the defendant entered by the permission
of the plaintiffs, yet he became a trespasser immediately
upon failure to comply with the provisions of the parol
agreement, and remained so up to the time he quit the
possession. (*Jackson* v. *Miller*, 7 *Cowen*, 747.)

II. Although the technical action of assumpsit, for use
and occupation, can only be maintained in cases where the
relation of landlord and tenant exists, this is so only
because that action is given by statute, and limited by it
to that class of cases. Yet a party may, nevertheless, re-
cover the value of the use of the land in a proper action
for the *mesne* profits, or the rents and profits of the land.
It is the action which, before the Code, would be termed
an action for *mesne* profits, and which, under the Code, is
simply "an action" in which the facts entitling the party
to recover are stated. Before the Code, an action for
*mesne* profits would lie when the plaintiff recovered the
possession of his land without suit. (*Leland* v. *Tousey*,
6 *Hill*, 328, 333. *Taylor's Landlord and Tenant*, 518, § 710.)
And since the Code, an action will lie for the same pur-
pose. (*Livingston* v. *Tanner*, 12 *Barb.* 485, 486. *Holmes* v.
*Davis*, 21 *id.* 265. 19 *N. Y.* 488.) The action for *mesne*
profits would lie as against a purchase under a parol con-
tract, although use and occupation would not. (*Smith* v.
*Stewart*, 6 *John.* 46.) The same action would lie when a

tenant held over, without the consent of his landlord, and is put out of possession under the statute relative to landlord and tenant. (1 *Wend.* 134.) By the Revised Statutes, the action of trespass for *mesne* profits was substantially abolished, and a suggestion in the form of a declaration, for use and occupation, substituted in its place. (3 *R. S.* 597, §§ 37, 38, 5*th ed.* 16 *Barb.* 26.) The measure of damages is that which would obtain in assumpsit, for use and occupation. The compensation is to be adjusted as upon contract, and not on the footing of tort. (19 *N. Y.* 488.)

III. The demurrer, in the justice's court, cannot be considered on this appeal. It was overruled by the justice, and the defendant answered upon the merits, and the demurrer had nothing further to do with the case. The answer waives the demurrer, and the appellate court cannot review the justice's decision. (11 *Barb.* 587. 10 *How.* 276. 1 *Denio,* 222.)

IV. The plaintiffs proved that the defendant was to make a handsome payment towards the purchase price of the land the first season, and to pay the interest annually. The defendant does not contradict this; nor is there any evidence conflicting with it. No payment of principal or interest was made within the year, nor is there any evidence tending to prove that the non-performance of the contract was owing to the fault, default or wrong of the plaintiffs; hence the refusal of the judge to charge upon a proposition that was not and could not be in the case, was entirely right. The judge's refusal to charge as requested was entirely right. The first proposition is too broad. It should have specified the nature of the fault, default or wrong, upon which the defendant desired the jury to pass, so that the court might determine whether it presented a legal excuse or defense. Had the court charged as requested, the jury might have found that the plaintiffs ought to have waived their legal rights, and were

in fault in not accepting the obligations offered in payment by the defendant.

*By the Court,* JOHNSON, J.   This is an action to recover for the use and occupation of premises, and cannot be maintained, unless the relation of landlord and tenant existed between the parties, by virtue of some agreement, either express or implied.   At common law, an action of assumpsit for rent would not lie, except upon an express promise made at the time of the demise.   But by our statute, an action on the case was authorized, to recover a reasonable satisfaction for use and occupation by a person under any agreement, whether by deed or parol.   (1 *R. S.* 748, § 26.)   Under this statute it has been uniformly held, that in order to maintain the action for reasonable satisfaction for use and occupation, the conventional relation of landlord and tenant must exist; and that unless that relation exists between parties, there is no implied promise, or obligation, to pay for use and occupation.   Where the defendant occupies under an agreement to purchase, he is not a tenant, but a vendee, and the relation is that of vendor and vendee, and in no conventional sense that of landlord and tenant.

In the case of *Smith* v. *Stewart,* (6 *John.* 46,) the defendant went into possession under a parol agreement to purchase, and after occupying several years, refused to complete his purchase, and take a deed.   He had paid nothing, but had occupied the premises and made improvements thereon; and it was held that the action for use and occupation could not be maintained, because the relation of landlord and tenant did not exist.   The court, in that case, said that by refusing to perform his agreement, he had changed himself into a trespasser, and was liable to be turned out as such, and made responsible in that character for *mesne* profits.   The action for *mesne* profits differs, from an action for use and occupation, in this, that the

latter is founded upon a promise, express or implied, while the former springs from a trespass, an entry *vi et armis,* upon premises, and a tortious holding.

The action to recover *mesne* profits is an action *quare clausum fregit,* and cannot be maintained without proof of the trespass. (*Till. Adams on Eject.* 328, 331, 338. 3 *Black. Com.* 205. *Bac. Ab. tit. Ejectment, h.*) It is founded on the action of ejectment, generally, and follows a recovery in that action. It is said, however, by Cowen, J., in *Leland* v. *Tousey,* (6 *Hill,* 328,) that *mesne* profits were the subject of an action, where the plaintiff had obtained possession without suit; and this may perhaps be so. But in order to recover in such a case, where the relation of landlord and tenant did not exist, it would be necessary for the plaintiff to prove the tortious holding. Here the relation of landlord and tenant did not exist, and there has been neither a tortious entry, nor a tortious holding, by the defendant. He went into possession by virtue of a parol agreement with the plaintiffs to purchase, and has been willing to pay substantially according to the agreement, as the testimony on both sides tends to show. The defendant quit the premises, because the plaintiffs refused to allow him to perform his agreement, or to accept performance on his part. Such is, at least, the tendency of the evidence. The defendant in this case, as in the case of *Smith* v. *Stewart,* (*supra,*) entered under color of title which he might have enforced in equity. But he never became a trespasser, as did the defendant in that case, by refusing to perform his agreement. It is the plaintiffs here who have violated the agreement, and they cannot, by their own wrongful act, convert the defendant either into a trespasser or a tenant. If they could do this, they would acquire a right of action by means of their own wrong, which the law will never allow. Whether, therefore, this is to be regarded as an action for use and occu-

Thompson *v.* Bower.

pation, or an action for *mesne* profits, it cannot be sustained upon the evidence.

The fact that actions of trespass for *mesne* profits were abolished in this State by the Revised Statutes, and another mode of recovering such damages adopted, does not affect the question we have been considering.

The cases holding that, in order to entitle a party to recover for use and occupation, the relation of landlord and tenant must have existed between the parties, are very numerous in this State, and are quite uniform. The case of *Sylvester* v. *Rawlston*, (31 *Barb.* 286,) is quite in point, if not entirely decisive of this case.

The court charged the jury that the agreement under which the defendant entered, for the purchase of the land, being void, the plaintiffs were entitled to recover the fair value of the use of the premises. This was error, and the exception to the charge was well taken. The right of action, either for use and occupation, or for *mesne* profits, as we have seen, depends upon other considerations.

The exceptions are also well taken to the refusals of the court to charge as requested. Each request embodies a correct legal proposition, applicable to the case upon the evidence, and should have been complied with.

The judgment must, therefore, be reversed, and a new trial ordered, in the county court, with costs to abide event.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, September 4, 1871. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]