GEORGE RICHARDSON, BY GUARDIAN, Respondent, *v.* HENRY RICHARDSON *et al.*, Appellants.

1. *Wills — Life estate — Survivorship — Guardianship.*— By the terms of a will, testator's daughter was to take the care of two brothers during their lives, and "in so doing" was to have the use and benefit of the personal property of the testator, and to have the possession of his land for the care and support of herself and children and her brothers. A special guardian was appointed for the latter. *Held,* that under the will, in the absence of any further provision, her death having occurred before that of her brothers, her husband could not succeed to her position in the control of the property and the care of her surviving brothers. No title vested in her as trustee, and there was no trusteeship into which her husband could enter, either under the will or by virtue of a judicial appointment.

  And no estate vested in her children. Their interest was through the mother, and was dependent upon her fulfilling the terms of the will in respect to the care and support of her brothers.

2. *Guardian — Ward's estate — Sale — Lease.*— A guardian has no power, without judicial sanction, to sell his ward's estate, but he may lease it. And a contract made by a guardian, by which the other party thereto should continue in possession of land belonging to the ward, on the condition of paying annually a contingent sum, to be fixed by a commissioner, for the support of the ward, might be upheld as a lease without the aid of court.

3. *Equity — Decree, when may be set aside.*— *Semble,* that after a lapse of three years, a decree of court cannot be set aside on motion.

### *Appeal from Jefferson Circuit Court.*

*J. J. Williams,* for appellants.

There is in the will an express devise to Ellen of the use and occupation of the whole estate during the lives of Samuel and George, and not for their support alone, but for that of her own children. The estate was a trust in her hands, partly for the benefit of her children, and continues so still. Her death does not destroy the trust. That the words of the will are sufficient to create a trust, see Pierce v. McKeehan, 3 Watts & S. 280 ; Redf. Wills, 174. The trust was not a personal one, but a substantial vested one for the life of others ; and, on her death, passed by operation of law to her husband, clothed with the conditions of the devise. The compromise in evidence was a complete defense to this suit, and the guardian had power to make it. (1 Pars.

Cont. 114, note *k*.) And the action of the court setting it aside on motion was at best a nullity.

*P. Pipkin* and *A. Greer*, for respondent.

The estate in Ellen Richardson being a remainder to take effect after the death of both Samuel and George, no curtesy could attach during the life of either of them. (Co. Litt. 20 *a*; 3 Dev. 270; 7 Viner's Abr. 149.)

The condition on which she had the use of the property was her taking care of the brothers. Her husband had no such power to care for them; hence that power ceased on her death. There was no trust estate in her which required the appointment of a trustee. (Callis v. Ridout, 7 Gill & J. 1.) There was no necessity for a trustee. The purposes of the will would be carried out whether Ellen lived or died. Her husband was appointed their guardian.

The will gave no vested interest in the property to Ellen's children. That interest is nothing but the use of the property while the mother took care of Samuel and George — a mere incident growing out of her use of the property, and ceasing with her death.

No sufficient words were used to create a trust estate for the children. (Redf. Wills, 433; 2 Sto. Eq., §§ 964, 974.)

The only inference to be drawn from the clause that Ellen should have possession of the land, is that if she took care of the two boys and kept them together in her family, she should be recompensed with the use of the testator's whole estate while she was doing it. Suppose Ellen had refused to take care of them, or had become physically or mentally incapable of doing so, could she or her husband claim the right of possession by virtue of her fee in the land so long as either of the boys lived?

The compromise read in evidence is not binding on George Richardson. Under the will Frederitzie had no power to make it. If he had, the agreement was void, because it affected the interest of Ellington, who was not made a party to the proceedings. And it was annulled by decree of the court before suit was brought. (Downing v. Still, 43 Mo. 309, and authorities cited.) As to the sufficiency of the annulling order, see Taylor v. Hunt, 34 Mo. 205.

CURRIER, Judge, delivered the opinion of the court.

This is an ejectment. Both parties claim under the will of John Richardson, deceased, and the true construction of the will is the first point for consideration. So far as the land in controversy is concerned, the following are the provisions bearing upon it: First, "I give and bequeath to my two sons, Samuel and George, all" the land described in the petition. * * Second, "I also give to my two sons, Samuel and George, all my personal property, including my negro man Wash; also including all money which may be owing to me on note and mortgage, which is to be loaned out for the benefit of my two sons during their natural lives; and, third, at their decease my daughter Ellen is to have the seventy acres (embracing the land described in the petition), including my house; and, fourth, my son-in-law, Michael Frederitzie, is to have forty acres; and also, my nephew, William Ellington, is to have forty acres on the south side of my land, including the Leeds farm, which is to be divided between the two; my son-in-law getting the Leeds place after the decease of my two sons, Samuel and George; and, fifth, it is my will that my daughter is to keep and have the care of my two sons, Samuel and George, during their natural lives; and *in doing so*, my daughter Ellen is to have the benefit of all my personal property, together with my negro man Wash, to keep and support my two sons, and all the land is to be in possession of my daughter Ellen for the care and support of *herself and her children and my two sons;* together with all the interest of all moneys belonging to me that may be loaned or on hand; and, sixth, after the decease of my two sons, all the money and personal property is to be divided equally between my daughter Ellen and my son-in-law Michael Frederitzie; and, seventh, I hereby appoint Michael Frederitzie guardian of my two sons, Samuel and George, and executor to my will."

The above-quoted provisions are inartificial in their arrangement, and redundant and clumsy in their phraseology, but the testator's intent is quite apparent from them. At the time the will was made, what was his position? He seems to have been a

widower, for no mention is made of a wife. He had, as the will indicates, three living children, namely, Ellen (who was the wife of the defendant, Henry Richardson) and two sons who were insane and incapable of taking care of themselves. These children were the prominent objects of his bounty, although he had a son-in-law and nephew, for whom he made some provision, and incidentally refers to the children of his daughter as persons to be supported out of his estate while their mother should have the custody of the two sons, providing for and taking care of them as pointed out in the will. There is nothing, however, to indicate a purpose on the part of the testator to vest in these children a legal interest in the property committed to their mother. Their support comes in incidentally through the mother, and as a reward in part, it may be presumed, for services to be rendered to her unfortunate insane brothers, for whom the testator throughout his will manifests a controlling solicitude. It is for them that he makes the largest and most liberal provisions. Indeed, the bulk of his entire estate was pledged to their maintenance; and to put the matter in the safest possible position, he vests *in them* a life estate, and then places them under the eye and supervision of their sister, relying upon her sisterly interest and affection. But Ellen's property interests might come in conflict with her duty to her brothers; therefore, the testator places them under the guardianship of their brother-in-law, Mr. Frederitzie, and appoints him executor to see that the provisions of the will are duly carried out. The will, although unskillfully drawn, is nevertheless sensible in its provisions, and is mainly defective in not anticipating the contingency of Ellen's death prior to that of her two brothers. It is her decease, leaving one of the brothers surviving her, that has given rise to this contest.

The will, however, plainly and unmistakably vested in Samuel and George Richardson a life estate in the premises in controversy. The defendants can take nothing therein, under the will, while that estate continues. George Richardson still survives, and it is the duty of the testamentary guardians, whose appointment appears to have been confirmed by the proper court, to

protect his interests in the property and guard his person. I see no legal ground for the claim that Ellen's husband succeeded to her position in the control of her property, or to the care of her surviving brother. There was no title vested in her as trustee, and there was no trusteeship into which her husband could enter, either under the will or by virtue of a judicial appointment. An estate for life, as has already been stated, was vested by the will directly in the testator's two sons; and no estate vested in the children of the testator's daughter. Their interest was through their mother, as has been remarked, and was dependent upon her fulfilling the terms and condition of the will in respect to the care and support of the two unfortunate brothers. Her death terminated her ability to do that, and left nothing further for her children to claim, either directly or through her, from the estate. But it appears that the defendant, Henry Richardson (the husband of Ellen and the father of her children) and the plaintiff entered into an arrangement by which the latter, as it was agreed, "should have the possession, use and control of the seventy acres" of land embraced in the present suit, subject to certain contingent charges for the support of George, the survivor of the testator's two sons. This arrangement is evidenced by a written contract containing various carefully-drawn and apparently well-considered provisions in relation to said estate, and the adjustment of the rights of the various parties therein interested. This arrangement appears to have been entered into in the progress of a prior ejectment suit, and as a compromise of the conflicting claims therein asserted. The contract was duly executed and placed upon the records of the court where the prior ejectment suit was pending. If this contract is still in force and binding on the parties, it seems to be conceded that it is a good bar to this suit.

The plaintiffs deny its validity, first, upon the ground that all the parties interested in the estate were not made parties to the instrument; William Ellington, to whom the testator left some land, but no part of that now in controversy, not having joined in the execution of the contract. Not being a party he was not bound; but how does that avail the plaintiff? The plaintiff and.

the defendant, Henry Richardson, were parties, and were bound by the contract; provided that Frederitzie, as guardian of George Richardson, had power to bind his ward in that behalf.

He had no authority, without judicial sanction, to sell his ward's real estate, but he might lease it. (See 1 Pars. Cont. 114, and authorities cited.) The contract in question might be regarded as amounting to a lease to Henry Richardson, upon a reservation of annual rents. The reasonableness and good faith of the transaction are not drawn in question. The contract provided that Henry Richardson should continue in possession of the premises, paying therefor, from year to year, a contingent sum, to be fixed by commission, for the support of Frederitzie's ward. As a lease of the premises, we are disposed to think the contract might be upheld. Apparently the arrangement was reasonable and judicious, and designed to put an end to litigation. But the plaintiffs further insist that the contract has been set aside by a judicial order or decree. To show that, the following record was read in evidence: "In the Circuit Court, February 5, 1869. George Richardson, by guardian, v. Henry Richardson. Motion. The motion heretofore filed in this cause to set aside and vacate a decree of this court, coming on to be heard, the same being heard, and by the court fully understood, it is considered by the court that the same be sustained."

What may have been the subject-matter of the decree here sought to be set aside, whether it related to the contract under consideration, or when it was rendered, are matters about which we are left in the dark. The plaintiff, however, read in evidence the record of certain proceedings or entries made under date of November 17, 1865, which refer to the contract, but make no mention of any decree. But suppose a decree of the date mentioned was made, merging in itself the contract, what authority had the court to set aside that decree on motion, after the lapse of more than three years? We know of none. The whole matter of these supposed prior judicial proceedings is a good deal in mist, so far as any light respecting them can be derived from the present record. There is nothing to show that the contract under review was ever set aside or declared of no effect. Treating it

as in force, we are disposed to regard it as a bar to this suit, and upon that ground to reverse the judgment and remand the cause. The other judges concur.