RUSSELL K. MARTIN v. SHERMAN S. SMITH AND ANOTHER.[1]

December 31, 1942.

No. 33,267.

1Reported in 7 N. W. (2d) 481.

*W. T. Coe,* for appellant.

*Stinchfield, Mackall, Crounse & Moore* and *John M. Palmer,* for respondents.

STREISSGUTH, JUSTICE.

Russell K. Martin as guardian of his incompetent sister, Edith K. Martin, brought this action for alleged trespass of defendants in occupying two rooms in the ancestral Martin home. Russell K. Martin will hereinafter be referred to as plaintiff.

Defendant Clara B. Smith is the mother, and defendant Sherman S. Smith is the brother, of plaintiff's former wife. Mrs. Smith and her son came to live with the Martins sometime in 1931 at the suggestion of Mrs. Martin, who was then expecting the birth of a child. Plaintiff concurred in the suggestion. Though the arrangement was intended to be only temporary, it actually continued for many years. For practically the entire period from December 1, 1931, to April 1, 1937, the Smiths occupied two rooms on the second floor of the Martin home, in which rooms it is claimed the incompetent, Edith K. Martin, had a life estate.

The arrangement did not prove harmonious, and from time to time after inception plaintiff requested defendants to find other accommodations. In each instance, however, the difficulties between the parties were ironed out and their original arrangement continued. Mrs. Smith testified that the requests for her to leave were always retracted by her son-in-law. Her testimony to that effect stands uncontradicted.

Plaintiff admitted that though he told Mrs. Smith and Sherman he had no right to rent the rooms on the second floor, he "agreed to let them come in" and that Mrs. Smith said "they would pay $35 a month apiece." While defendants made no regular payments of rent in cash, they did, from time to time, make substan-

tial contributions of money, clothing, and other items to plaintiff and his family. Plaintiff admitted that the amounts paid by the Smiths totaled over $1,900. The Smiths claim their contributions exceeded $4,100. Whatever the correct amount may be, the facts are undisputed that plaintiff intermittently received money, goods, and services from the defendants during the entire period of their occupancy of the two rooms and that he received such sums both before and after his several requests of defendants that they leave.

Plaintiff's wife commenced a suit for divorce on May 7, 1937, and within a short time thereafter these two separate actions of trespass, which were later consolidated, were commenced by him as guardian of his sister against Mrs. Smith and Sherman Smith respectively.

Plaintiff deliberately chose to sue in trespass rather than on contract, express or implied. His theory is that by his mother's will his sister, Edith K. Martin, was devised a life estate in the second floor of the family dwelling with an express reservation that "the second floor shall not be sublet or occupied during Edith's absence, providing she is away at school"; that because of this reservation it was illegal for him as guardian of Edith's estate to give consent to the occupancy of the second floor by third persons or to sublet the same; and therefore that the entry of the defendants was tortious and plaintiff's remedy was trespass *quare clausum fregit.*

We deem it unnecessary to determine whether, under the will of Mrs. Martin, Edith had a life estate in the rooms on the second floor of the Martin home, or whether, as defendants claim, the will of Mrs. Martin vested in the corporate trustee named therein the title, possession, control, and management of the rooms as against Edith or her guardian. Though it be assumed that the guardian was vested with the title and right of possession necessary to maintain trespass (63 C. J., Trespass, pp. 902, 903, §§ 19, 20; 42 Wd. & Phr. [Perm. ed.] Trespass, p. 449; 2 Waterman, Trespass, pp. 447, 454, 511, §§ 987, 995, 1058; 2 Greenleaf, Evidence [16 ed.]

p. 561, § 613; Kimball v. Hilton, 92 Me. 214, 42 A. 394; Palmer v. Tuttle, 39 N. H. 486; Cowenhoven v. City of Brooklyn [N. Y.], 38 Barb. 9), his action must nevertheless fail because of the total absence of a second necessary element of trespass, to-wit: wrongful and unlawful entry by the defendants upon plaintiff's possession.

The gist of the action of trespass *quare clausum fregit* is the breaking and entering *vi et armis* of the plaintiff's close. Whatever is done after the breaking and entering is but aggravation of damages. Unless the entry was forcible and unlawful, there can be no recovery. 2 Waterman, Trespass, pp. 219, 447, §§ 810, 987; 42 Wd. & Phr. (Perm. ed.) *Trespass Quare Clausum Fregit,* pp. 477, 478; 63 C. J., Trespass, pp. 893, 894, 946, §§ 11, 12, 98; 2 Greenleaf, Evidence (16 ed.) pp. 561, 568, §§ 613, 621; Morris v. Hazel (Del.) 1 Boyce, 324, 77 A. 766; Prussner v. Brady, 136 Ill. App. 395; Wilkins v. Lee, 73 Kan. 321, 85 P. 140; Kentucky Stave Co. v. Page (Ky.) 125 S. W. 170; Bethea v. Home Furniture Co. 185 S. C. 271, 194 S. E. 10. The invasion of plaintiff's premises must be "unpermitted." Whittaker v. Stangvick, 100 Minn. 386, 111 N. W. 295, 10 L.R.A.(N.S.) 921, 117 A. S. R. 703, 10 Ann. Cas. 528.

We cannot adopt the plaintiff's theory that, because of the provision against subletting or occupying the second floor during Edith's absence, any entry by the defendants, even with the consent of the legally appointed guardian of Edith's person and estate, constituted an illegal or wrongful entry. The new probate code has not changed the rule that an administrator or guardian is authorized to lease the real property of the estate for the term of the administration or guardianship. 2 Kent, Comm. 228; Smith v. Park, 31 Minn. 70, 16 N. W. 490; Glencoe Ditching Co. v. Martin, 148 Minn. 176, 181 N. W. 108; Richardson v. Richardson, 49 Mo. 29; Emerson v. Spicer, 46 N. Y. 594; and this without an order of the court. 1 Elliott, Contracts, § 526; 28 C. J., p. 1137, § 227; Cypress Creek Coal Co. v. Boonville Min. Co. 194 Ind. 187, 142 N. E. 645; Palmer v. Oakley, 2 Doug. (Mich.) 433, 47 Am D.

41; Jackson v. O'Rorke, 71 Neb. 418, 98 N. W. 1068. And if it be argued that the will specifically prohibited the subletting or occupancy of the second-floor rooms during Edith's absence, it is evident that the only effect of defendants' entry and their continued occupancy of the rooms with the guardian's unauthorized consent was to create a tenancy at will under the rule that "such tenancies arise by implication of law where * * * one * * * enters under a void lease." Thompson v. Baxter, 107 Minn. 122, 124, 119 N. W. 797, 21 L.R.A.(N.S.) 575. And see 4 Dunnell, Dig. & Supp. § 5377; Hagen v. Bowers, 182 Minn. 136, 233 N. W. 822; Fisher v. Heller, 166 Minn. 190, 207 N. W. 498; Fisher v. Heller, 174 Minn. 233, 219 N. W. 79; Goodwin v. Clover, 91 Minn. 438, 98 N. W. 322, 103 A. S. R. 517; Van Brunt v. Wallace, 88 Minn. 116, 92 N. W. 521; Johnson v. Albertson, 51 Minn. 333, 53 N. W. 642.

Lack of authority in the guardian to sublet or give his consent to the occupancy of the rooms did not render the tenancy of defendants illegal or void as against public policy but merely rendered it terminable at will. Plaintiff, as guardian, not having elected to terminate the tenancy but having recognized it until the defendants vacated the rooms, it is now of no consequence that the agreement to lease might have been avoided and the lease terminated at an earlier date. Smith v. Park, 31 Minn. 70, 16 N. W. 490, *supra*.

Nor can plaintiff in this tort action recover the rental value of the rooms as mesne profits, for an action for mesne profits likewise springs from a trespass—an entry *vi et armis* upon premises and a tortious holding. 63 C. J., Trespass, p. 1053, § 254; 2 Waterman, Trespass, p. 596, § 1160; Roukous v. De Graft, 40 R. I. 57, 99 A. 821; Thompson v. Bower (N. Y.) 60 Barb. 463, 477. Mesne profits are "a sum recovered for the value or benefit which a person in wrongful possession has derived from his wrongful occupation of the land between the time when he acquired wrongful possession and the time when possession was taken from him." Roukous v. De Graft, 40 R. I. 57, 99 A. 821, 822; 27 Wd. & Phr. (Perm. ed.) p. 151.

The action for mesne profits is an emanation from the action of ejectment.

"Under the mode of proceeding by ejectment invented by Chief Justice Rolle, and introduced at an early day into this country, the plaintiff recovered the term as laid in his demise, and nominal damages only. When by this method he recovered the possession, in fiction of law, he was remitted to his original seizin, and being so, had an action of trespass to recover the mesne profits for the whole time he was out of possession." 2 Waterman, Trespass, p. 595, § 1158.

We attach no importance to the exact common-law classification of plaintiff's purported cause of action, the common-law forms of action having been abolished in this state. Not having shown any wrongful entry or tortious holding by defendants, plaintiff has wholly failed to establish a cause of action of any variety, common-law or statutory, either in trespass *quare clausum fregit* or for recovery of mesne profits. The order directing a verdict in favor of defendants was therefore clearly correct.

Judgment affirmed.

