# E. MILLER ET AL. v. CHESTER SLATE CO.

ERROR TO THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY.

Argued March 11, 1889—Decided November 4, 1889.
[To be reported.]

(*a*) A lease of a slate quarry contained the following covenant: "The party of the second part agrees to forfeit the lease when they fail in not working the quarry for a space of three successive months." The lessor alleging a forfeiture of the lease, brought ejectment against the lessee.

1. The words "working the quarry," mean the working of the pit; and the doing of any work necessary for the proper and convenient use of the pit, such as the removal of earth, debris, water, ice, or snow, would be working the quarry as truly as the blasting and removal of the slate.

2. Wherefore, a forfeiture of the lease would not be incurred by a failure to remove slate from the quarry, during a period when it was necessarily interrupted by the work of removing the water, snow and ice in the quarry, to make it possible to reach and remove the slate.

3. The trial court having properly instructed the jury upon the question raised by the language of the lease, and the jury having found in accordance with the instruction, whether the correct exposition came from the court or the jury could make no difference to the plaintiff.

Before PAXSON, C. J., CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 63 July Term 1888, Sup. Ct.; court below, No. 7 April Term 1887, C. P.

On February 16, 1887, Edwin Miller, W. H. Miller and others brought ejectment against the Chester Slate Company, to recover a tract of land in East Allen township, containing a slate quarry. Issue.

At the. trial on April 24, 1888, it was made to appear that the defendant, as the Chester Slate Company, was in possession of the disputed property, as the assignee of a lease thereof for the purpose of quarrying and manufacturing slate, executed by Nathan Miller, the predecessor in title of the plaintiffs, to George S. Ziegenfuss and R. A. Grider, the lease containing this covenant: "The party of the second part agrees to forfeit the lease when they fail in not working the quarry for the space of three successive months."

The plaintiffs introduced evidence to show that the defendant became the assignee of the rights of the lessees in the lease in 1882, and continued to mine and manufacture slate therefrom until October 18, 1886, when it ceased work and made no attempt to mine or quarry slate from that day until the suit was brought.

John Geiser, called for the defendant, testified that he was superintendent of the quarry, when he was asked to show what work was done in October.

Plaintiffs objected to all testimony on the part of defendant of any work done at the quarry after October 18th, except in the quarry itself.

By the court: Objection overruled; exception.[17]

The question, then answered at length, was followed by another:

Q. Do you recollect that there was a large flood of water in the latter part of January?

Objected to, as incompetent and irrelevant.

By the court: Objection overruled; exception.[18]

The witness answered that there was a flood of water on January 29th, and about 35 or 40 feet in depth got into the quarry:

Q. What was the condition of the quarry during the month of January, or even December already, with reference to the ice that was in it?

Objected to, as incompetent and irrelevant.

By the court: Objection overruled, offer admitted; exception.[19]

Richard Chapman, called for defendant:

Q. You have stated that you have some 25 years experience as superintendent of slate works, and that you have been working in slate quarries since you were 12 years of age, in this country and in the old country; now, as an expert, what is meant by slate men by the working of a quarry; what constitutes the working of a quarry?

Objected to, as incompetent.

By the court: Objection overruled; exception.[20]

The witness, having answered the foregoing question, was asked:

Q. Suppose it was water that was in the quarry, that had to be pumped out before you could mine any slate, would that be called working a quarry among slate manufacturers?

Objected to, as incompetent.

By the court: Objection overruled; exception.[21]

The court, REEDER, J., charged the jury, in part, as follows:

The plaintiffs claim in this issue that there has been a forfeiture of the lease on the part of the defendant, because of a breach of the provision in the lease which requires the working of the quarry continuously, and which provided that if the quarry is not worked for a period of three months, then the lease will be forfeited. It is claimed by the defendant that that is not the true interpretation of this clause in the lease; or, in other words, that the lease does not provide that if the defendant fails to work the quarry for a period of three months, then there should be a forfeiture of the lease, but that there should be a literal interpretation of the clause, that if they fail *not* to work the quarry for a period of three months, then there would be a forfeiture of the lease; or, in other words, they want the court to say to you that if the defendant, to whom was given for a valuable consideration, first in the lease from Nathan Miller to Rufus A. Grider and George Ziegenfuss, and subsequently by the articles of the agreement between Nathan Miller, and Funk and the Laidshaws, a right to go upon his property and dig and manufacture slate, that if they did

what they had paid a valuable consideration for the privilege of doing that would be a forfeiture, and that is the true meaning of this clause in the lease. I cannot so interpret it, and I say to you that the true interpretation of this clause in the lease is as if the word " in " in the lease read " on account of : " that is to say, that the true reading of this clause in the lease is, that the party of the second part agrees to forfeit the lease when they fail on account of not working the quarry for a period of three successive months ; or, when they fail in manufacturing slate on account of not working the quarry for a period of three months.

There is no money rental reserved to Nathan Miller by this lease, but it provides that the compensation to him shall be a royalty of thirty cents upon each and every square of slate made, or mined and sold, and one fourth of all the money received in the sale of flagging, curbing, and building stones. The questions of fact, therefore, for your determination, in order to arrive at your verdict, are but three : 1. What is the meaning of the term " working the quarry," in this clause in the lease ; 2. Was the quarry worked within the three months, during which the plaintiffs claim that it was not worked ; 3. If it was not worked within the three months, were the defendants prevented from working the quarry by the acts of God, or unavoidable accident.

The defendant contends that the terms " working the quarry," in this clause of the lease, are words of technique ; that they are words used in a particular sense in connection with the mining and the manufacture of slate. The plaintiffs, on the other hand, claim that the words are used in their ordinary sense. The difference between the contention on the part of the plaintiffs and that on the part of the defendant is, in effect, this : If the plaintiffs' contention is correct, then it would be the duty of the court to say to you what the words " working the quarry " meant. If the contention of the defendant is correct, then it is the province of the jury to say, from the testimony, what the words " working the quarry " meant. [I have concluded to leave to you, under the testimony of the experts that have been called in this case, the interpretation of the words " working the quarry," as contained in this clause in the lease ; that is to say, the interpretation of the words " work-

ing the quarry," as ordinarily used among slate miners and manufacturers.] [9]

The defendants have called two witnesses, Richard Chapman and Peter Robinson, who have testified as experts. [They both say that work done in the manufacture of slate about a quarry, is working the quarry as generally understood among slate miners and manufacturers.] [10] If I am mistaken about their testimony on this point, you will correct me; but I think Mr. Robinson said that the working of a quarry consisted in pumping out the water, taking the blocks out of the hole, hoisting them out and delivering them to the slaters on the bank, and splitting and manufacturing them into slate, and that that constituted working the quarry. Therefore, the working of the quarry does not consist alone, according to his testimony, of taking the blocks out of the hole, but that, incident to working the quarry is also the manufacture of the slate blocks into slate for the purposes of the trade. And this would seem reasonable too, in connection with the lease, because the only rental that is provided for by this lease is derived from the sale of the manufactured slate. The plaintiffs are not compensated, under this lease for the rock taken out of the hole. Their compensation for the taking of their property is based upon the manufactured slate, the slate that is manufactured after taking it out of the hole. But, as I said before, I propose to leave that question to you for your determination, under the evidence, as a question of fact.

The expert witnesses for the defence have also testified that where an unusual quantity of water is precipitated into the hole, which renders the digging of slate impossible until the water is removed, that also is working the quarry. The plaintiffs, upon the other hand, called an expert, George H. Ziegenfuss, who testifies that the removal of dirt and rubbish which have fallen into the hole, preparatory to the removal of the blocks to manufacture slate, would be working the quarry. He says, however, that the manufacture of slate out of blocks already taken out upon the banks, without carrying on the work in the hole, would not be working the quarry. He also says that the removal of water covering the beds in the quarry, from which the blocks are taken to manufacture slate from, is not working the quarry.

The defendant contends with some degree of force, and this is a matter that you will take into consideration in determining this question, that there is no difference between the removal of dirt, that has fallen in the quarry and concealed the beds, in order to get at the beds to take out the blocks to manufacture slate, and the precipitation of water in the hole which has covered the beds, and its removal in order to get at the beds in order to take out blocks to manufacture slate. This is a matter that you will take into consideration in connection with the testimony of Mr. Ziegenfuss, for the purpose of determining what weight that testimony is entitled to.

If, however, you should conclude that the pumping of the water was not working the quarry, within the meaning of the terms as contained in this clause in the lease, then you will proceed to the consideration of another question. It is undisputed in the testimony in this case that work was stopped generally at this quarry upon October 18th; but that two men, one a slater and the other a dresser, did not stop with the rest of the men; and, according to the testimony of one of the witnesses, William Jones continued to work three or four days later, and according to the testimony of Amandus Stetler, he continued to work until the latter part of the week; indeed, he fixes the day as the day before he himself quit work, which was on Saturday, and that would make it Friday, that James, the slater and his dresser continued to work, and that would be the Friday succeeding Monday, the 18th of October, which would make it October 22d, that James and his dresser continued working on the bank. [Was that working the quarry under the testimony in this case? Because if it is, if you believe from the evidence of the witnesses who have testified as experts in this case, that that is working the quarry, and you believe also from the evidence in this case that the pumping of the water, in order to get at the beds of slate commenced on the 19th or the 21st day of January, the time of the first flood, then they worked the quarry within the three months, and there would be no forfeiture.] [11]

[If, however, you believe that the work of James and his dresser upon the bank, in working up the blocks of slate remaining there, was not working the quarry, but that the working of the quarry stopped on October 18th, and that the quarry

Charge of Court below.

was not flooded by the first flood until the 19th or 21st day of January, then the quarry was not worked within the three months, unless you should find from the testimony that the making of the slate posts, holing them, and the work that was done by William Jones in January, in splitting slate, was working the quarry.] [12]

The testimony is that the first flood occurred either on the 19th or the 21st day of January. The testimony of one of the two witnesses who testified upon that subject is, that it was about eight days before the large flood, which occurred upon January 28th, and the testimony of the other witness is that it was eight or ten days, or from the 19th to the 21st day of January. If, however, you believe from the evidence that work was not done upon the quarry, at the time testified to by some of the witnesses, by James and his dresser upon the bank, or, if you believe from the evidence that the pumping was not done there at the time they testify to, then, as I said before, [you will determine whether, from the evidence, the manufacturing of fence posts and the splitting of the slate in January was working the quarry within the meaning of the term as contained in this clause in the lease.] [13]

If you should conclude, that working the quarry is not what was contended for by the defendant, but that working the quarry means solely going down into the hole and taking out the slate blocks from the bottom of the pit, then, before you will render your verdict for the plaintiffs, you will pass to another consideration of this testimony. Where the performance of a duty is prevented by inevitable accident without the fault of the contracting party, the law excuses him from the performance of that duty. But where a person absolutely contracts to do a certain thing, not impossible or unlawful at the time, he cannot be excused from the obligation of his contract; because he might have made proper provision to guard against it at the time he entered into the contract. Neither inevitable accident, nor even those events denominated the acts of God, will excuse him from the performance of any such contract. And the reason given is, that he might have provided in his contract against such contingencies.

But there are a variety of cases which are exceptions to this general principle of law. Thus, where a man enters into a

contract of marriage and dies, or either party to the contract dies, he cannot be held to the performance of his contract. So, where a man enters into a contract for the sale of a particular horse, and the horse dies, he cannot be held to the performance of his contract. So, where a man enters into a contract for the sale of specific goods, he is discharged from his contract if the goods are destroyed. So, too, where a man enters into a mining lease, containing a clause of forfeiture in case he does not work the mine, or mine the material in a given time mentioned in the lease, and he is prevented from so doing because of the acts of God, or by inevitable accident, he is excused from the performance of that duty, and his failure to perform it does not work a forfeiture of his lease. [Therefore, I say to you that in this case, if you should find that the working of the quarry within the meaning of this clause in the lease, is not as contended for by the defendant, as a working of the quarry for a period of three consecutive months, it will not work a forfeiture if that working of the quarry was prevented by inevitable accident or the acts of God.] [14]

[If, as contended for by the defendant, they were unable to work the quarry because of the condition of the ice which formed upon the side, or which formed upon the bottom of the quarry, and that men refused to go into that quarry for the purpose of working it, or even if they made no effort to procure men to work the quarry, yet, if its condition was such that nobody could work in that quarry without danger to life or limb, the law excuses them, because of this act of God, from the performance of their contract, and the non-performance of it does not work a forfeiture under this clause in the lease.] [15]

[If you should find that the pumping of the water out of the quarry is not working the quarry, within the meaning of this clause in the lease, then you will consider whether their not working was on account of such an inevitable accident, resulting from a condition of things over which they had no control and which they had no reason to anticipate or to guard against; and if it was, then they were not able to work the quarry by reason of the act of God, and if that prevented it, then they are excused from the performance of the duty that was enjoined upon them by this clause in the lease, and its non-performance will not work a forfeiture of their rights under the lease.] [16]

If, however, this was for only a certain portion of the time, then you will proceed to determine the question as to whether there was a period of three months when they could have worked the quarry; when the quarry was in such condition that they could have worked it without endangering the lives of their employees, or when they could have quarried the stone from the bottom of it, because of the absence of the water. If there was, then, finding the other facts in favor of the plaintiffs to which I have called your attention, it would work a forfeiture; that is to say, if, between October 18th and January 18th following, there was no work done, or the quarry was not worked according to the meaning of the term in this clause of the lease, and the condition of the quarry was such that it might have been worked, then, of course, their not working the quarry would work a forfeiture. But if, from October 18th to December 18th the quarry was in condition to be worked, and yet ice formed after that time, and between October 18th and the time of the conclusion of the three months, they could not work the quarry without endangering the lives of their employees, then the law would excuse them from working the quarry, and their not working it would not work a forfeiture of the lease. . . . . .

The plaintiffs request the court to charge you:

1. That it is the province of the court to construe the lease in evidence from Miller to Ziegenfuss and Grider, and that the jury are bound to accept the construction given to it by the court.

Answer: This is true in a measure; that is to say, the lease being a written instrument, it is the duty of the court to construe it, except so far as the meaning of the words, "working the quarry." Those being words of technique, we have heard testimony in relation to their meaning, and we submit that testimony to you for the purpose of determining what is meant in the craft, or among slate manufacturers and miners, by the words "working the quarry." [1]

2. That the words "quarry" and "working the quarry" are not terms of art, and are to be construed according to their usual and well-known signification among the mass of mankind, which is presumed to be the sense in which the parties used them at the time of making the contract.

Answer: That point I cannot affirm.[2]

3. That a quarry is a place, cavern or pit, where stones are cut from the earth for building or other purposes, and that working the quarry containing slate means, removing the slate rock from the quarry and preparing it for building or other purposes.

Answer: I cannot so construe these words as contained in this provision of the lease, but leave that question of fact for your determination.[3]

4. That the provision in the lease in question, in reference to the forfeiture of the lease, is to be construed in connection with the other parts of the lease relating to the same subject matter; and, as by the first clause of the lease, Nathan Miller granted a lease to Ziegenfuss and Grider, for the purpose of digging, mining, quarrying and manufacturing slate, and erecting buildings and machinery to work the same, the said lease became forfeited whenever lessees failed to dig, mine, quarry, and manufacture slate for the space of three successive months.

Answer: If this point means that the lease became forfeited when they failed to dig, mine and manufacture, I cannot affirm it. If it means dig, mine, quarry or manufacture slate, then I leave that question to you.[4]

5. That the evidence in the case is undisputed; that between October 18, 1886, and January 29, 1887, the defendant did not dig, nor attempt to dig, mine or quarry, or make any effort to dig, mine or quarry any slate rock from the plaintiffs' quarry, and that between said dates they manufactured no slate, except the making of about a half a square of roofing slate from a block hoisted from the quarry prior to October 19, 1886, and the holing of a small quantity of slate posts, which had been taken from the quarry prior to said last mentioned day; that the work so done was entirely inadequate to relieve them from the penalty of forfeiture imposed by the lease, and the verdict must be for the plaintiffs.

Answer: This point I cannot affirm.[5]

6. That between October 18, 1886, and January 19, 1887, there was a failure to work the quarry in the manner required by the lease to prevent a forfeiture, and the verdict must therefore be for the plaintiffs.

Answer: This point I deny.[6]

The jury returned a verdict in favor of the defendant.    Judgment having been entered upon the verdict, the plaintiffs took this writ, assigning as error [inter alia] :

1–6. The answers to plaintiffs' points.[1 to 6]

9–16. The parts of the charge embraced in [ ] [9 to 16]

17–21. The admission of defendant's offers.[17 to 21]

*Mr. Edward J. Fox, Jr.*, and *Mr. Edward J. Fox*, for the plaintiffs in error :

1. The fundamental error into which the court below fell was in assuming that the words, " working the quarry," were not to be understood in their plain, ordinary and popular meaning, but were technical words, and that evidence must be received to enable the jury to find their meaning : Watson v. O'Hern, 6 W. 362 ; Koch's App., 93 Pa. 434.    It was the province of the court alone to construe the contract : 2 Parsons Cont., 4 ; Robertson v. French, 4 East 136 ; Stanley v. Insurance Co., L. R. 3 Ex. 73 ; Eaton v. Smith, 20 Pick. 155 ; Krum v. Mersher, 116 Pa. 17 ; Galey v. Kellerman, 123 Pa. 491.

2. It is apparent from an examination of the forfeiture clause, that the lease would not be forfeited if the lessees failed to manufacture slate for three successive months.    The lessor might recover damages for such a failure, but could not forfeit the lease.    The forfeiture could only take place when there was no quarrying.    It seems to us, that is the reasonable construction of the instrument, and Blackstone's pithy rule declares it to be a cardinal principle that it must be " reasonable and agreeable to common understanding."

3. The court was in error in its instruction as to the allegation of the defendant that they could not fulfil their contract, because of the acts of God.    It is essential to the validity of a defence to an action for a breach of contract, on the ground that by reason of the act of God the party could not fulfil his contract, that there should not be any human agency promoting the casualty, or that there should not have been any negligence on the part of the party contracting, or failure to perform his full duty in the premises : Michaels v. Railroad Co., 30 N. Y. 564 (86 Am. Dec. 415) ; Crosby v. Fitch, 12 Conn. 410 (31 Am. Dec. 745) ; Williams v. Grant, 1 Conn. 487 (7 Am. Dec. 235) ; New Brunswick Co. v. Tiers, 24 N. J. L. 697 (64 Am.

Dec. 394); Klauber v. Amer. Exp. Co., 21 Wis. 21 (91 Am. Dec. 452); Bostwick v. Railroad Co., 45 N. Y. 712; Marquis of Bute v. Thompson, 13 M. & W. *487. Moreover, the defendant in this case was not entitled to interpose as a defence the equitable doctrine of substantial performance: Gillespie Tool Co. v. Wilson, 123 Pa. 19.

*Mr. O. H. Meyers* (with him *Mr. George W. Geiser*), for the defendant in error:

"Working the quarry" includes digging, mining, quarrying and manufacturing slate, and the defendant had a right to establish this by proper proof. There is another principle involved that will prevent the court from interpreting these words, and from excluding parol evidence of usage in explaining them. This is a case where the plaintiffs claim a forfeiture, the enforcement of which equity abhors. Where the penalty is a forfeiture, and it is fairly doubtful in the mind of the court, what certain words in a contract may mean, or it is rendered so by extrinsic facts, there the court, for the purpose of ascertaining their meaning and thus to protect the party against an odious penalty, will resort to every legitimate means to effect that purpose and protection. To do otherwise would be to assist the party in the recovery of a forfeiture instead of relieving against it, which is the peculiar province of equity: Steedman v. Cooke, 13 S. & R. 174; Stafford v. Walker, 12 S. & R. 195; Moyers v. Tiley, 32 Pa. 269; Helme v. Insurance Co., 61 Pa. 107; McKnight v. Kreutz, 51 Pa. 232; Newman v. Rutter, 8 W. 51.

OPINION, MR. JUSTICE WILLIAMS:

There are twenty-one assignments of error in this case, but they relate, directly or indirectly, to the same subject. The company defendant is the lessee of a slate quarry. The plaintiffs are the lessors. The lease contains the following stipulation: "The party of the second part agrees to forfeit the lease when they fail in not working the quarry for a space of three successive months." The plaintiffs allege a forfeiture by reason of a failure to work the quarry during three successive months from October 18, 1886, and have brought this action to recover possession for that reason. The defendant denies that

there has been a failure to work the quarry for three months, and asserts that, for several weeks of the time counted by the plaintiffs, operations were practically impossible by reason of the accumulation of snow and ice in and upon the sides of the quarry; that for three or four other weeks the quarry was filled with water by heavy floods to such an extent that it was necessary to keep the pumps constantly in motion, in order to make it possible to reach and quarry the slate. This work the defendant says was done in the quarry, and was necessary to be done before quarrying slate could be resumed. Two questions are thus raised: First. What do the words "working the quarry" mean? Second. Who shall determine the question, the court or the jury?

The quarry is the excavation or pit from which the slate is taken. Working the quarry, therefore, is the working of the pit. The doing of any work necessary to the proper and convenient use of the pit, such as the removal of earth, debris, water, ice, or snow, would seem to be working the quarry as truly and as usefully as the blasting and removal of the slate-rock, for the latter cannot be done unless the quarry is kept reasonably free from obstruction. A coal mine is worked for the purpose of obtaining coal; but gangways are to be made, slate removed, and drainage secured, before mining can be successfully done. If a mine should be flooded with water, the removal of the water is a necessary mining operation, and until it is accomplished the miners cannot resume work on the coal. While this work is in progress, with the pumps moving day and night, the operator is doing the necessary—the only possible—work in his mines, and is working them, as matter of fact and law. We think the meaning of the words is plain and obvious without the aid of the testimony of experienced quarrymen, and that they were rightly interpreted by the jury. If so, the second question is unimportant in this case. If the meaning be that which has been indicated, the plaintiffs were no worse off because the jury were left to say so upon the evidence, than if the court had so instructed them as matter of law. What the plaintiffs asked was, that the court should interpret the contract to mean that a failure to hoist slate-rock from the quarry was a failure to work the quarry. No matter what else was being done, nor how indispensably necessary it might be

Syllabus.

to the work of getting the slate, it must go for nothing. This would be both narrow and unjust, and the court was right in refusing to put such a construction on the words under consideration. Whether the correct exposition came from the court or the jury could make no possible difference to the plaintiffs, for its effect upon the verdict in either case would be the same. The assignments of error are not sustained, and

The judgment of the court below is affirmed.