Cypress Creek Coal Co. *v.* Boonville Mining Co.—194 Ind. 187.

---

CYPRESS CREEK COAL COMPANY ET AL. *v.* BOONVILLE MINING COMPANY.

[No. 24,073.  Filed February 5, 1924.]

1. MINES AND MINERALS.—*Coal Under Ground.*—*Real Estate.*— Ordinarily, coal under ground is a part of the real estate, and a conveyance thereof is a conveyance of real estate. p. 197.

2. LIFE ESTATES.—*Mines.*—*Operation by Life Tenant.*—Where land has been impressed with the character of mining lands before a life estate is created, and a mine already opened on such land, the life tenant may work or lease such mine, and he is not guilty of waste in so doing; even where the mine has not been in operation for a number of years when the life estate is created, but there has been no final abandonment

Cypress Creek Coal Co. *v.* Boonville Mining Co.—194 Ind. 187.

with an executed intention to devote the property to a different use, the life tenant may resume mining operations. p. 197.

3.  LIFE ESTATES.—*Life Tenant.—Right to Convey Part of Real Estate.—Waste.*—A life tenant has no right to dispose of any part of the real estate itself, and, if he does so, he is guilty of waste. p. 198.

4.  GUARDIAN AND WARD.—*Lease of Coal Mine.—Approval of Court Unnecessary.*—A lease of a coal mine for a definite term of years, authorizing the lessee to take from such mine the coal underlying the leased premises and requiring the payment of specified royalties therefor, is not a conveyance of real estate, and the approval of the court is not necessary to its validity. p. 198.

5.  GUARDIAN AND WARD.—*Authority of Guardian.—Lease of Real Estate.*—The statute (§3068 Burns 1914, §2521 R. S. 1881) gives a guardian the right to manage his ward's estate for the best interests of his ward, and confers upon him the right to lease the ward's real estate without an order of court, and the approval of the court is not necessary to the validity of such a lease. p. 198.

6.  GUARDIAN AND WARD.—*Lease of Real Estate.—By Whom Questioned.*—One who joins with the guardian of a life tenant of land adjoining his in executing a lease of a coal mine for twenty-five years cannot attack the validity of the lease on the ground that the guardian exceeded his authority in the event the life tenant did not live that long, since such fact concerned merely the lessee and the remaindermen, and the lease would at least be good during the continuance of the guardianship. p. 199.

7.  CONTRACTS.— *Construction.— Mutuality.*— A contract is to be construed as mutual if such a construction is possible. p. 199.

8.  MINES AND MINERALS.—*Lease of Coal Mine.—Validity.*—A lease of a coal mine which gave the lessee the absolute and exclusive right to mine and remove the coal from under a tract of land for the term of twenty-five years, for which he was to pay the lessors a specified sum per ton, with a minimum royalty of $1,000 per year, and providing for the commencement of operation within six months, and if this was not done, the lessors had the option of declaring the lease forfeited, *held* not void for want of mutuality, the lessee being bound thereby to operate the mine and pay the royalty. p. 199.

9.  MINES AND MINERALS.—*Lease of Coal Mine.—Abandonment when Unprofitable.—Lessee to be Judge.*—A clause in a lease of a coal mine giving the lessee the right to terminate the

NOVEMBER TERM, 1923.          189

Cypress Creek Coal Co. *v.* Boonville Mining Co.—194 Ind. 187.

lease at any time the operation of the mine ceased to be profitable, "of which the lessee shall be the judge", would not invalidate the lease for lack of mutuality, for the reason that even though the quoted words should be held invalid, that would not affect the provision giving the lessee the right to abandon the lease when it ceased to be profitable, which contemplated the actual existence of that condition and not the mere assertion that it was unprofitable.  p. 200.

10.   LANDLORD AND TENANT.—*Tenancy at Will.*—*Lease of Coal Mine.*—*Abandonment when Operation proved Unprofitable.*—A clause in a lease of a coal mine authorizing the lessee to abandon the lease whenever operation ceased to be profitable does not create a tenancy at will, as the lessee could not, under such provision, end the lease whenever he desired, but only when the operation of the mine was, in fact, unprofitable. p. 201.

11.   MINES AND MINERALS.—*Lease of Coal Mine.*—*Nonpayment of Royalties.*—*Forfeiture Clause.*—A provision in a lease of a coal mine that it shall be void in case of default in the payment of royalties does not make it optional with the lessee whether he will make the payments, the forfeiture provision being for the benefit of the lessor, not the lessee, and a promise to pay is not met by a failure to pay.  p. 201.

12.   ALTERATION OF INSTRUMENTS.— *Must be Material.*— *Must Change Legal Effect of Instrument.*—An alteration which will avoid a contract must be material, and, to be material, it must change the legal effect of the instrument.  p. 201.

13.   ALTERATION OF INSTRUMENT.—*Life Tenant's Lease.*—*Insertion of Names of Remaindermen.*—*Signing by Remaindermen.*—Insertion of names of remaindermen in life tenant's lease after delivery and subsequent signing by remaindermen *held* not material alterations invalidating the lease, as they did not change the effect of the contract between the original parties to it and did not affect their rights.  p. 201.

14.   LANDLORD AND TENANT.— *New Lease.*— *Effect on Prior Lease.*—The execution of a new lease for the same premises does not affect a prior lease thereon between the same parties unless the second lease is inconsistent with the former.  p. 202.

15.   MINES AND MINERALS.—*Lease of Coal Mine.*—*Execution of New Lease.*—Where adjoining landowners joined in leasing a coal mine to a third party, the subsequent execution by one of the lessors of another lease of part of his land to the same lessee, making no change in the rights of the other lessor under the prior lease, and expressly reserving the lien of both lessors under the prior lease for rents and royalties thereunder, *held* not to avoid the first lease.  p. 202.

16. MINES AND MINERALS.—*Lease of Coal Mine.*—*Commencing "Operation" within Specified Time.*—A clause in a lease of a coal mine requiring the lessee to "begin operation under this lease within six months" from the date of the lease, the mine, at that time, being partially dismantled and requiring a large expenditure to put it in condition to run, did not require the lessee to begin the actual production of coal within the specified time, but would be satisfied by the commencement of operations to put the mine in shape to produce coal, where such operations were continued until the mine actually was producing coal.  p. 203.

17. ACKNOWLEDGMENT.—*Invalid.*—*Effect of.*—The invalidity of the acknowledgment of an instrument does not affect the validity of the instrument as between the parties thereto nor as to parties having actual notice thereof.  p. 206.

18. MINES AND MINERALS.—*Taking Another's Coal from Under Ground.*—*Measure of Damages.*—In an action for damages for the wrongful removal of coal from land, the measure of damages, if the trespass was wilful and intentional, is the value of the mineral at the time and place of conversion, with nothing deducted for labor expended in mining and marketing it; if the taking was not wilful, but was the result of a mistake, then the taker is entitled to have the cost of production deducted from its value.  p. 206.

From Gibson Circuit Court; *Chase Harding*, Special Judge.

Action by the Boonville Mining Company against the Cypress Creek Coal Company and others to recover damages for removing coal from the former's lands. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*W. C. Mason, James P. Duncan* and *Thomas Duncan,* for appellants.

*Albert W. Funkhouser, Arthur F. Funkhouser, Simon L. Vandeveer, Robert D. Markel* and *Union W. Youngblood,* for appellee.

GAUSE, J.—This was an action by the appellee against appellants and others to recover damages for coal alleged to have been removed from land upon which the appellee claimed an exclusive right to mine coal, and

also for an injunction to prevent appellants from removing any more coal therefrom.

The court rendered judgment against appellants in favor of the appellee for damages in the sum of $20,958.38, and costs, and enjoined them from removing any coal from said land during the existence of the lease under which the appellee claims.

The land containing the coal in dispute is owned by Edmund H. Hart.

The appellee claims its right by virtue of a lease dated November 4, 1916, executed to its assignor, Clem E. Doane, by said Hart and wife, which lease also purported to have been executed by Daniel DeForest, through his guardian, Sylvester T. DeForest, and which included land owned by said Hart and also other land in which said Daniel DeForest held a life estate.

The appellants claim their rights by virtue of a deed to such coal, executed by said Hart and wife on June 6, 1917.

There are asignments of error based upon rulings of the court holding the complaint sufficient and certain paragraphs of answer bad and in overruling the appellants' motion for a new trial, but as the questions raised by these several assignments are related, we shall discuss the propositions contended for without a separate discussion of each assignment.

A statement of the facts disclosed by the record is necessary before considering the questions raised.

On and prior to July 24, 1913, said Daniel A. DeForest owned 200 acres of land in Warrick county, which was at that time and for many years prior thereto had been leased by him to other persons for coal mining, and during such time, the same was used for mining purposes and a coal mine was in operation thereon at such time and from which said DeForest received a rental in the form of a royalty. On said day he exe-

cuted a deed to his children conveying the fee in such real estate, but reserving to himself a life estate, which deed was recorded July 24, 1916.

That on March 16, 1914, Sylvester T. DeForest was appointed guardian for said Daniel A. DeForest.

That in July, 1916, the person who had been operating the mine on said DeForest land surrendered his lease and ceased the operation thereof, and removed a part of his property therefrom, and on November 4, 1916, when the lease in dispute was executed, the mine was not in operation. That said Edmund H. Hart owned eighty acres of land lying north of and adjacent to said DeForest land. That no mine had ever been opened on said Hart land. That on November 4, 1916, said Hart and wife and said Daniel A. DeForest, by his guardian, Sylvester T. DeForest, executed to one Clem E. Doane the lease in dispute, which covered the northwest quarter of section thirty-two and the northwest quarter of the northeast quarter of section thirty-two, as belonging to said DeForest, and also eighty acres described as belonging to said Hart. Said lease purported to give to said lessee the absolute and exclusive right to mine and remove the coal from under said land during the term of twenty-five years. Said lease also contained the following provisions, which are necessary to be considered in determining the questions raised: "(3) The said lessee may terminate this lease at any time the mine ceases to be profitable to operate, of which the lessee shall be the judge, by giving the said lessors thirty (30) days notice of his intention so to do and upon the expiration of said thirty (30) days shall have the right and privilege to remove all the buildings, machinery and improvements now situated or hereafter erected upon the real estate hereinabove described provided all royalties due and owing to the said lessor shall have been paid.

Cypress Creek Coal Co. *v.* Boonville Mining Co.—194 Ind. 187.

"(4) In consideration of the rights, privileges and franchises herein granted by the said lessors to the said lessee the said lessee agrees to pay to the said lessors as royalty for all coal mined under the land hereinabove described the sum of two and one-half cents per ton of two thousand pounds of mine run coal; and for all coal taken from other lands and hauled through the entries under the lands of the said lessors hereinabove described, the said lessee agrees to pay to the said lessors for each ton of two thousand pounds of mine run coal so hauled the sum of one-half of one cent per ton. Said royalties to be due and payable to the said lessors monthly on the tenth day of each and every month of each year for the preceding month. Each party of the first part to receive for his share of the royalty a sum proportionate, as to the number of acres of actual coal lands included in this lease; the lessors to select one of their number as treasurer to receive the whole sum of said royalty from the lessee, and receipt therefor, who shall make the distribution among the other lessors according to the term of this lease. It is expressly understood by and between the parties that in the event the said lessee shall make default in the payment of the royalties hereinabove provided and the same shall remain unpaid for a period of three months from the time they are due, this lease becomes null and void and terminated and the said lessors shall have and hold a lien on any mining equipment and building located on the real estate of the lessors hereinabove described until such royalty or royalties are paid.   *   *   *

"(5) It is understood and agreed that the lessees will begin operation under this lease within six (6) months from the date herein, otherwise this lease is null and void and the same may be forfeited at the option of the lessors.   *   *   *

"(7) It is understood and agreed by the parties hereto that the minimum rental or royalty reserved under this lease for the period of each year from the time the said lessees begin operation under this lease shall be not less than the sum of one thousand ($1,000) dollars. And if, at any time, the royalty paid the lessors under this lease should not amount to the sum of one thousand ($1,000) dollars royalty, shall be a credit on the future royalties of any year thereafter in which the royalties shall have amounted to more than one thousand ($1,000) dollars on the coal actually mined that year.

"It is understood and agreed by the parties hereto that the royalty for all coal mined on the south half of the northwest quarter of section thirty-two (32), township five (5) south, range eight (8) west, is to be kept separately and paid to Daniel A. DeForest, but the royalty for all coal mined on any of the other above described real estate is to be paid to the party above selected by the lessors and to be divided among the lessors on the proportion of forty acres of coal lands for the said Daniel A. DeForest et al. and eighty acres of coal lands for the said Edward Hart."

That said guardian's action in executing said lease was not ordered or approved by the court until July 19, 1917.

That said Sylvester T. DeForest was a notary public and as such notary took the acknowledgment of said Hart and wife to said lease. That Doane caused said lease to be recorded by the recorder of Warrick county on April 30, 1917.

That thereafter Doane procured the children of Daniel A. DeForest, and who were the owners of the remainder interest in the DeForest real estate, to sign said lease and their names were inserted in the body of the same.

Cypress Creek Coal Co. *v*. Boonville Mining Co.—194 Ind. 187.

That thereafter, on July 19, 1917, this lease, bearing the signatures of the remaindermen as well as the original parties, was reported to and approved by the court, and then was again recorded.

That on June 1, 1917, said Daniel A. DeForest, by his guardian, and the remaindermen, together with Henry A. Roetzel and Henry G. Roetzel, executed a lease to said Clem E. Doane, giving said Doane the right to mine coal for twenty-five years, on the south eighty acres of the DeForest land, being the south half of the northwest quarter of section thirty-two, and also on approximately eighty acres owned by said Roetzels adjoining the DeForest land on the west.

This south eighty acres of the DeForest land was included in the first lease given to Doane but it was provided in that lease that all royalties for coal mined on that part was to be paid exclusively to DeForest and no part of the same to Hart.

This lease from the DeForests and Roetzels contained the following provisions, among others: "(1) That the south half of the northwest quarter of section thirty-two (32), township five (5) south, range eight (8) be and the same is hereby released from a certain lease executed by the lessor Daniel A. DeForest et al., and Edward H. Hart and wife to the within lessee and said lease is hereby canceled as to the last above described real estate, executed November 4, 1916, and recorded in Miscellaneous Record 11 at pages 63-4 of the records of said county and state.   *   *   *

"(12) It is further agreed by the parties hereto that the rents and royalties herein agreed to be paid shall be deemed and treated as rents received upon contract by the lessors and the same shall be a first lien against all said leasehold property, subject to the lien of the lessors Ed. H. Hart et al., in a lease dated Nov. 4, 1916."

That the lessee Doane did not begin the actual pro-

duction and hoisting of coal within six months after the execution of the Hart-DeForest lease, but, within that time, he bought some of the property at the mine belonging to the former lessee, and also bought a small amount of equipment which it was necessary for him to have to operate the mine, and did a small amount of work in and about the mine for the purpose of putting it in working order.

There was evidence which justified the court in finding that, within the six months period, he made a good faith beginning, under said lease, to put said mine in working condition, and that, from such beginning, he, in good faith, continued until he had said mine producing coal in October, 1917, and that he and his assignee, the appellee, had spent approximately $125,-000 in equipping said mine, the principal part of which amount, however, having been spent after the expiration of said six months period.

That on September 5, 1917, said Doane assigned said lease to the appellee. That the six months period named in the Hart-DeForest lease expired on May 4, 1917.

That on June 6, 1917, said Hart and wife executed a deed to all the coal under the Hart land to Erie Canal Coal Company and the Big Four Coal Company. This deed provided that the conveyance was made, "subject to all prior leases of any nature." The grantees in said deed later deeded said coal to the individual appellants, who in turn leased a part of it to the appellant Cypress Creek Coal Company.

That the appellants had actual knowledge of the existence of the lease by Hart and DeForest to Doane prior to the time Hart and wife conveyed the coal to Erie Canal Coal Company and the Big Four Coal Company, and prior to the acquiring of any rights therein.

That appellants opened a mine on the Hart land and

took out a large amount of coal, and the money judgment in this case is for the coal taken out.

It appears that the court allowed damages based upon the value of the coal after it was removed from the mine, less the cost of removing or producing it.

It is first contended that the complaint was insufficient because the lease, under which appellee claims, was ineffective and gave appellee's assignor, Doane, no rights, for the reason that the action of Sylvester T. DeForest in executing said lease as guardian of his father, was not authorized nor approved by the proper court. The appellants' position is that the so-called lease was, in fact, a conveyance of a part of the real estate, which the guardian could not execute without an order of the court.

To determine this question, it is necessary to determine what the character of the interest was that the guardian was seeking to transfer to the lessee Doane by the execution of the instrument.

It must be conceded that ordinarily coal under the ground is a part of the real estate, and where the owner conveys it, he conveys a part of the real estate.

1, 2. But it is also generally held that where, before a life estate is created, the land has been impressed with the character of mining lands and there is a mine already opened upon the land, the life tenant may work or lease such mines as were already in existence when his estate was created, and that he is not guilty of waste in so doing. *Hendrix, Exr.,* v. *McBeth* (1878), 61 Ind. 473, 28 Am. Rep. 680; *Richmond Nat. Gas Co.* v. *Davenport* (1905), 37 Ind. App. 25; *Andrews* v. *Andrews* (1903), 31 Ind. App. 189, and cases cited. See note to *Deffenbaugh* v. *Hess* (1909), (Pa.) 36 L. R. A. (N. S.) 1099. Even where the mine has not been in operation for a number of years when the life estate is created, if

in fact there was no final abandonment of it as mining property, with an executed intention to devote the property to a different use, this fact would not prevent the life tenant from resuming operations. *Andrews* v. *Andrews, supra.*

From the facts in this case, it is apparent that the life tenant, Daniel A. DeForest, had the right to lease his land for the purpose of continuing the operation of a coal mine which was in existence when the life estate was created and which not only was in operation at such time but had been operated many years both before and after the beginning of such estate. Yet he was only a life tenant and had no right to dispose of any part of the real estate, and if he did so, he would be guilty of waste.

3.

The fact that he could lease this land for coal, if the effect of the lease was to continue mining of the character that was being carried on when the life estate was created, and not be guilty of waste, is because such act is not the conveyance of a part of the real estate, under such conditions, any more than the disposal of growing crops, planted by himself, would be a conveyance of real estate. The instrument in dispute not being a conveyance of real estate, authorities holding that a guardian cannot convey his ward's real estate without an order of court, are not in point.

4.

Under a statute giving a guardian the right to manage his ward's estate for the best interests of the ward, he has a right to lease the ward's real estate without an order of court. §3068 Burns 1914, §2521 R. S. 1881; 1 Elliott, Contracts §526; *Jackson* v. *O'Rorke* (1904), 71 Nebr. 418, 98 N. W. 1068; *Palmer* v. *Oakley* (1847), 2 Doug. (Mich.) 433, 47 Am. Dec. 41.

5.

If the guardian in leasing the land for twenty-five

years exceeded his authority, in the event his ward did not live that long, that is something the lessee and the remaindermen might be concerned about, but Hart could take no advantage of it. The lease would at least be good during the continuance of the guardianship.

6.

Appellants cite cases where statutes expressly require an order of court to authorize a guardian to lease the ward's land, and also cases where no mine was in operation when life estates were created, but such cases are not in point in this case.

Appellants say that the lease by Hart and DeForest to Doane was merely an offer to execute a lease to Doane whenever the guardian obtained the approval of the court. The approval of the court was not necessary and there was nothing in the lease making it conditional upon the court approving it.

It is contended that there was nothing in the lease binding upon Doane; that he was not obligated to do anything and for that reason the lease was wanting in mutuality. A contract is to be construed as mutual if such a construction is possible. 13 C. J. 333, and cases cited. In the lease in question, the lessee Doane, by the fifth item, agreed expressly to begin operations under such lease within six months. If he did not do so, the lessors had the option of declaring it forfeited, as expressly provided therein, but this did not give Doane any option in the matter. He was obligated to begin operation within that time under the lease, which provided for a minimum royalty of $1,000 per year, "from the time the said lessees begin operation under this lease." This lease clearly bound the lessee to operate the mine. *Consumers Gas Trust Co.* v. *Littler* (1904), 162 Ind. 320.

7, 8.

It is also contended that said contract is lacking in mutuality because of the provision in the third item

of said lease, heretofore set out, which gave to 9. the lessee the right to terminate the lease at any time the mine ceased to be profitable to operate, "of which the lessee shall be the judge." The appellants insist that by virtue of this provision the lessee could terminate the lease at any time without any reason, and the lessors would be helpless to prevent it. If the clause, "of which the lessee shall be the judge," is to be construed as meaning that the decision of the lessee is final and no resort to the courts can be had, then such clause would be invalid and of no effect. This, however, would not affect the balance of said provision giving the lessee the right to abandon when it ceased to be profitable. *Kistler* v. *Indianapolis, etc., R. Co.* (1882), 88 Ind. 460; *Bauer* v. *Samson Lodge* (1885), 102 Ind. 262; *Supreme Council, etc.,* v. *Forsinger* (1890), 125 Ind. 52, 9 L. R. A. 501, 21 Am. St. 196; *Maitland* v. *Reed* (1906), 37 Ind. App. 469; *American Steel, etc., Co.* v. *Tate* (1904), 33 Ind. App. 504.

The provision for the abandonment in case the operation ceased to be profitable contemplated the existence of such a fact, not merely the assertion of the fact.

In the case of *Consumers Gas Trust Co.* v. *Littler, supra,* a gas and oil lease contained a provision for the ending of the contract whenever, "in the judgment of the second party * * * oil or gas * * * having been found, have ceased to exist in paying quantities." The court, in construing such provision said: "The stipulation does not contemplate an arbitrary judgment, but an honest one; a judgment that is justifiable by the results of a *bona fide* investigation." See Thornton, Oil & Gas, (3d ed.) §§148, 156; *Vandalia Coal Co.* v. *Underwood* (1916), 60 Ind. App. 675.

Under the provision referred to in the lease in question, the lessee could not abandon the lease unless it, in fact, ceased to be profitable to operate. This case is

clearly distinguishable from cases where contracts give to one party the absolute right to terminate the contract at the pleasure of such party, as in the case of *Knight* v. *Indiana Coal, etc., Co.* (1874), 47 Ind. 105, 17 Am. Rep. 692, and similar cases.

Our construction of the lease also disposes of appellants' contention that the lease created an estate at will, because the lessee could not, by its terms, end the lease whenever he desired. *Gilmore* v. *Hamilton* (1882), 83 Ind. 196.

The provision in the lease providing that it shall be void in case of default in the payment of royalties, does not make it optional with the lessee whether he will make the payments and does not create a tenancy at will. The lease contains an express agreement to pay the royalties and the provision as to forfeiture in case of nonpayment is for the benefit of the lessor, not the lessee. A promise to pay is not met by a failure of pay, and if the lessee fails to pay as he has agreed, then it is optional with the lessor whether he will elect to treat the lease as forfeited. *Hancock* v. *Diamond Plate Glass Co.* (1904), 162 Ind. 146. There is no question in this case of any default in payments or a forfeiture on that account.

The appellants contend that the inserting of the names of the remaindermen in the lease and their signing it, after it had been executed and delivered by Hart and DeForest and recorded by Doane, was such an alteration of the instrument as rendered it void. An alteration which will avoid a contract must be material. It must change the legal effect of the instrument, and the question is whether the rights of the party who did not make nor consent to the change have been materially affected, either beneficially or injuriously. *Hayes* v. *Matthews* (1878), 63 Ind. 412, 30 Am. Rep. 226; 1 R. C. L. pp. 967, 968. The subsequent

202    SUPREME COURT OF INDIANA,

Cypress Creek Coal Co. *v.* Boonville Mining Co.—194 Ind. 187.

signing of the lease by the remaindermen, after its delivery, did not change the effect of the contract between the original parties to it. It had no more effect upon Hart's rights than if the remaindermen had executed a separate agreement with Doane, and it was the same as if a separate agreement between the remaindermen and Doane had been endorsed upon the instrument, which would not affect the original agreement. It did not purport to change any part of the original obligations existing between Hart and DeForest on the one side and Doane on the other. The obligations of Hart were neither increased nor diminished, nor were those of DeForest, nor of Doane, so far as his contract with Hart and DeForest was concerned. It was not a material alteration of the original lease.

The execution of the lease by the Roetzels and DeForest on June 1, 1917, did not avoid the lease given by Hart and DeForest to Doane. Cases can be found which hold that the giving or the acceptance of a second lease is evidence of an intention to abandon a prior lease on the same premises, but this is where the second lease is inconsistent with the former lease. There was nothing in this second lease inconsistent with the lease by Hart and DeForest to Doane, so far as Hart's rights therein were concerned. Instead of it being any evidence of an intention to abandon the same, so far as Hart's interests therein were concerned, the lease from Roetzel and DeForest to Doane expressly reserved, in §12, the lien that Hart and DeForest had for rents and royalty under the first lease.

The Hart-DeForest lease, it is true, gave Doane the right to mine coal under the south eighty acres of the DeForest land, but provided that all royalties for coal removed from that part should go to DeForest alone.

The Roetzel-DeForest lease to Doane released this eighty acres from the former lease. This was not a mat-

ter in which Hart could be interested. Doane and De-Forest could have modified or changed the contract as to this eighty acres at any time without Hart's consent. They could have changed the amount of royalty per ton that DeForest was to receive, and, in fact, this is what was done. Hart was not concerned in it and cannot object to it.

It is true that Hart, by the first lease, was to receive an interest in one-half cent per ton for any coal taken from other lands and hauled through any of the De-Forest land. He would still be entitled to his interest in this haulage compensation, if any coal was taken through this south eighty acres and not through the rest of the DeForest land. There was nothing in the Roetzel-DeForest lease to Doane that could deprive him of this. This latter lease, to which he was not a party, provided that the south eighty acres of DeForest's land was released from the first lease, but expressly reserved the lien of Hart and DeForest for rents and royalties under the first lease.

We think there is no question but that Hart would be entitled to his share of the haulage compensation if any coal is taken from other lands and hauled through this south eighty of the DeForest land.

The only shaft on any of this land is located on the north eighty acres of the DeForest land, so that any coal upon which any haulage is apt to accrue will be taken through this shaft and not through the south eighty acres. But if this situation does not always continue, Hart clearly has all the rights he ever had under the original Hart-DeForest lease.

The appellants contend that the clause in the Hart-DeForest lease to Doane, "the lessee will begin operation under this lease within six months from the 16. date herein," required the lessee to begin the actual production of coal, that is, to have the

mine in actual operation within that time. The best proof that the parties did not mean, by the clause quoted, that the mine was to be operating within six months, is that they did not say so. The lessee was to begin operation under the lease within that time.

Keeping in view the circumstances and conditions existing, namely, that the mine was not being operated and had been partially dismantled and that a large expenditure was necessary to put it in condition to run, it was natural for the parties to make an agreement either as to when work was to start to put the mine in shape or when the production of coal was to start. By the language used, they evidently intended that the lessee was to begin the work of putting the mine in shape. This was work that it was necessary for him to do, and he would be doing it under and by virtue of the lease. He would be operating under the lease. The minimum royalty was to start from the time the lessee began operation, so that the lessors would begin receiving their compensation within the six months. By the Standard Dictionary, "operation" is defined as, "A course or series of acts to effect a certain purpose." The construction we are giving to the word as used in the lease in question is consistent with this definition.

In the case of *Fleming Oil, etc., Co.* v. *South Penn. Oil Co.* (1893), 37 W. Va. 645, 17 S. E. 203, the court construed a lease which provided that the lessee should, "commence operations for a test well within one year", etc., and it was contended by the lessor that the lessee was compelled to have the drill working, the well actually being sunk, but the court held it was not to be given such a construction. The court in the above case said: "Webster defines the word 'operation' as 'an effect brought about in accordance with a definite plan;' and, in giving the interpretation ordinarily

ascribed to the words, 'to commence operations,'—that is, applying to the words their common acceptance—I would understand the expression to mean the performance of some act which has a tendency to produce an intended result.   For instance, if a man had determined to erect a brick house, and, in pursuance of that design, had quarried the rock on his own land to be used in the cellar walls and foundation, and had burned a kiln of brick on the same premises, for the purpose of constructing the walls and chimneys, it surely could not be said that he had not 'commenced operations,' for the construction of his house.   *   *   *   And, again, where a building has been destroyed by fire, how frequently do we hear it remarked that the owner commenced operations at once for the construction of another by clearing away the debris, and contracting for material with which to rebuild the structure?   The terms of the covenant contained in said lease must be considered as having been complied with, no matter how slight may have been the commencement of any portion of the work which was a necessary and indispensable part of the work required in putting down the test well if commenced before (the date fixed)."

There was evidence which justified the court in finding that the lessee in good faith began operation under this lease, before the six months period expired, by actually beginning a series of acts for the purpose of, and which were necessary to, starting the mine to producing coal, and that these operations were continued until said mine was actually producing.   These acts were done by the lessee under the lease and constituted a beginning of operation under the lease, which was all the contract required.   *Miller* v. *Chester Slate Co.* (1889), 129 Pa. 81, 18 Atl. 565.

Appellants contend that the lease in question is void,

because Sylvester T. DeForest, who was guardian of a party to the lease, also took the acknowledgment, as a notary public, of Hart and wife, to the instrument.    If Sylvester T. DeForest was such an interested party as disqualified him from taking such acknowledgment, then the only effect of such interest would be to make the acknowledgment void, but that would not affect the validity of the instrument as between the parties thereto and as to any parties having actual notice thereof.    The authorities cited by appellants sustain this proposition.    *Hubble* v. *Wright* (1864), 23 Ind. 322; *Kothe* v. *Krag-Reynolds Co.* (1898), 20 Ind. App. 293.

The evidence showed that appellants had notice of this lease before they acquired any interest from Hart.

Appellants contend that the damages assessed are excessive.    It is well settled that the measure of damages in cases of this kind, if the trespass or conversion is wilful and intentional, is the value of the mineral at the time and place of conversion, with nothing deducted for labor expended in mining and marketing it.    If the taking is not wilful, but is the result of a mistake, then the taker is entitled to have deducted from its value, the cost of production.    *Everson* v. *Seller* (1886), 105 Ind. 266; *Sunnyside Coal, etc., Co.* v. *Reitz* (1895), 14 Ind. App. 478; *American Sand, etc., Co.* v. *Spencer* (1913), 55 Ind. App. 523.    Even figured upon the basis of an inadvertent trespass, the evidence showed damages to the amount assessed by the court. This was as favorable a rule as appellants were entitled to, and the damages were not excessive.

Not finding any error in the record, the judgment should be affirmed.

Judgment affirmed.