Mignatti Construction Company, Inc., Petitioner v. Commonwealth of Pennsylvania, Environmental Hearing Board et al., Respondents.

Township of Salford and Township of West Rockhill, Petitioners v. Commonwealth of Pennsylvania, Department of Environmental Resources, Respondent.

498

Argued November 14, 1979, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer and Rogers. Judges Blatt, DiSalle, Craig and MacPhail did not participate.

*Robert G. Bricker,* of *Souder, Rosenberger & Bricker,* with him *Francis X. Grabowski,* of *Jaczun & Grabowski,* for protestants.

*Paul W. Callahan,* for applicant.

*K. W. James Rochow,* Assistant Attorney General, for Department.

OPINION BY JUDGE MENCER, February 28, 1980:

On October 18, 1976, the Department of Environmental Resources (DER) issued to Mignatti Construction Company, Inc. (Mignatti) a surface-mining permit to operate a stone quarry on a 79.4-acre site in West Rockhill Township, Bucks County. Salford and West Rockhill Townships (Townships) appealed the issuance of the permit to the Pennsylvania Environmental Hearing Board (Board). The Board set aside the permit and required Mignatti to submit a "soil and erosion plan" (*sic*)[1] in accordance with 25 Pa. Code §§102.5(b) and 102.13(d)(1) (as it relates to surface-mining permits) and to submit an application for an air quality permit in accordance with Section 6.1 of the Air Pollution Control Act (APCA), Act of January 8, 1960, P.L. (1959) 2119, *as amended,* added by Section 6 of the Act of October 26, 1972, P.L. 989, 35 P.S. §4006.1. From this order, Mignatti and the Townships have filed cross-appeals with this court.

## MIGNATTI'S APPEAL

Mignatti first argues that the Board erred when it concluded that Section 6.1 of APCA requires the issuance of an air quality permit prior to the operation of a quarry. We disagree. Section 6.1 provides, in pertinent part, as follows:

(a) On or after July 1, 1972, no person shall construct, assemble, install or modify any stationary air contamination source, or install

---

[1] Apparently the Board had in mind an erosion and sedimentation control plan.

thereon any air pollution control equipment or device . . . unless such person has applied to and received from the department written approval so to do. . . .

(b) No person shall operate any stationary air contamination source which is subject to the provisions of subsection (a) of this section unless the department shall have issued to such person a permit to operate such source in response to a written application. . . .

The Board found, on substantial evidence, and Mignatti does not here dispute, that its proposed quarry is a stationary air contamination source as defined by Section 3(4), (7), and (8) of APCA, 35 P.S. §4003(4), (7), (8).[2] Mignatti argues, however, that the quarry is not subject to the permit requirements because one does not "construct, assemble, install or modify" a quarry. We disagree. The Board's findings, supported by substantial evidence, indicate that quarries do not occur naturally. Topsoil must be removed and stockpiled. Various structures such as scales, offices, and drainage facilities must be installed. A quarry operation involves significant alteration to the natural condition of the land by the use of machines and explosives. *See Miller v. Chester Slate Co.,* 129 Pa. 81, 18 A. 565 (1889). Such an operation is clearly within the meaning of "construct" as used in APCA. Moreover, since the operation of the quarry necessarily involves its enlargement as it is opened and worked, each day on which the quarry is operated it is being

---

[2] 25 Pa. Code §127.14 provides that an air quality permit is not required, despite Section 6.1, if it is a source "determined to be of minor significance by the Department." Nothing in the record, however, supports a determination that a rock quarry is a source of minor significance, nor has Mignatti received a determination by DER that the source is of minor significance. See 25 Pa. Code §123.1.

modified within the meaning of APCA. Therefore, we must conclude that the rock quarry is capable of being constructed and modified, as those terms are used in APCA, and that a Section 6.1 permit was properly required by the Board. This conclusion comports with the purpose of APCA, which is to *prevent* pollution from being emitted into the atmosphere. *See* Section 6.1(b) of APCA, 35 P.S. §4006.1(b); 25 Pa. Code §127.1.

Finally, Mignatti argues that the Board erred when it concluded that Mignatti had not submitted an adequate erosion and sedimentation control plan.

25 Pa. Code §102.5(b) provides that an erosion and sedimentation control plan must consider, *inter alia,* the following factors: (1) the topographic feature of the project area, (2) the types, depth, slope, and areal extent of the soils, (3) the proposed alteration to the area, and (4) the amount of runoff from the project area and the upstream watershed area. The Board concluded that "the plan is silent or contains insufficient information on such considerations as topographic features, soil characteristics and the amount of runoff from the project and the upstream watershed." Our review of the record indicates that the plan, taken in conjunction with the supplementary material supplied by Mignatti, contains sufficient information as to topographic features and soil characteristics. Mignatti submitted numerous drawings detailing the topography of the area. Mignatti also submitted results of test borings, along with a soil description. We must conclude, therefore, that the Board erred in its conclusion that this information was insufficient. We cannot conclude on this record, however, that the Board erred in its conclusion that the runoff and upstream watershed information was insufficient, and we will affirm the Board on that aspect.

The Board also concluded that the proposed sedimentation basin capacity is insufficient to control the surface water runoff. We agree. 25 Pa. Code §102.13 (d)(1) provides that a sedimentation basin "shall have a capacity of 7,000 cubic feet for each acre of project area tributary to it." The erosion and sedimentation control plan provides for a 16-acre work area and a 5.5-acre quarry area. The Board concluded that the 21.5 acres would thus require a basin capacity of 150,500 cubic feet and noted that the proposed basin capacity is only 75,829 cubic feet.

Mignatti argues that this analysis is faulty because of 25 Pa. Code §102.11, which provides that the 7,000-cubic-feet requirement is mandated *"unless* the designer of the erosion and sedimentation control plan shows that alteration of these . . . facilities . . . shall prevent accelerated erosion and sedimentation." (Emphasis added.) We find no evidence on the record, however, that the designer of the plan has met this burden and will affirm the Board's conclusion.[3]

TOWNSHIPS' APPEAL

The Townships first argue that DER failed to fulfill its obligations under Article 1, Section 27 of the Pennsylvania Constitution, which states:

The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the en-

---

[3] Mignatti further argues that the capacity of the basins was not put in issue before the Board and that no testimony was presented that they were of inadequate capacity. The regulations, however, clearly place the burden on Mignatti to demonstrate the effectiveness of the lesser-capacity basin.

Mignatti suggests that 16 acres, or the work area, is the only acreage for which basins are required. Even accepting this figure, however, the capacity of the basins is inadequate, as a 16-acre area would require 112,000 cubic feet of basin area.

vironment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

In *Payne v. Kassab*, 11 Pa. Commonwealth Ct. 14, 312 A.2d 86 (1973), *aff'd*, 468 Pa. 226, 361 A.2d 263 (1976), we enunciated a threefold standard for testing compliance with Section 27:

(1) Was there compliance with all applicable statutes and regulations relevant to the protection of the Commonwealth's public natural resources? (2) Does the record demonstrate a reasonable effort to reduce the environmental incursion to a minimum? (3) Does the environmental harm which will result from the challenged decision or action so clearly outweigh the benefits to be derived therefrom that to proceed further would be an abuse of discretion?

11 Pa. Commonwealth Ct. at 29-30, 312 A.2d at 94.

Our review of the record indicates that, apart from the deficiencies in the erosion and sedimentation control plan, DER has fulfilled the *Payne* requirements and thereby complied with the constitutional requirements. First, DER has complied with the applicable statutes.[4] The record shows that DER examined and considered the existing water runoff and watershed and the effect of the future quarry operation, both as to water supply and economic impact and as to potential pollution. DER has thus met the criteria in Sec-

---

[4] The applicable statutes are The Clean Streams Law, Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §691.1 et seq., and the Surface Mining Conservation and Reclamation Act, Act of May 31, 1945, P.L. 1198, *as amended*, 52 P.S. §1396.1 et seq., and the regulations adopted pursuant thereto.

tion 5(a) of The Clean Streams Law.[5] *See Delaware County Community College v. Fox,* 20 Pa. Commonwealth Ct. 335, 342 A.2d 468 (1975). Likewise, DER has complied with the mandate in Section 4(b) of the Surface Mining Conservation and Reclamation Act, 52 P.S. §1396.4(b), which requires that DER review applications and "make such further inquiries, inspections or examinations as may be necessary or desirable for a proper evaluation thereof." DER considered Mignatti's application for almost three years, during which it conducted its own technical reviews and onsite inspections and considered data submitted by the Townships. A field investigation was conducted by an aquatic biologist, accompanied by a geologist and a representative of the Bucks County Health Department. An onsite investigation was made by a mine inspector, a geologist, the Chief of the Pit and Quarry Section of DER, and the Chief of the Anthracite Surface Mining Section of DER.

Second, the record demonstrates a reasonable effort to reduce the immediate environmental incursion from the quarry to a minimum. In addition to the previously discussed safeguards, there are stringent controls on blasting and noise levels. We are persuaded that these conditions will keep the immediate environmental incursion to a reasonable minimum. *See Delaware County Community College v. Fox, supra,* 20 Pa. Commonwealth Ct. at 357, 342 A.2d at 481.

Finally, we believe that the record demonstrates that benefits of the quarry are substantial and outweigh the environmental harm which will result from the quarry construction.

---

[5] 35 P.S. §691.5(a). Section 5(a) reads, in pertinent part:

(a) The board and the department . . . shall . . . consider, where applicable, the following:

(1) Water quality management and pollution control in the watershed as a whole;

The Townships next argue that the adjudication by the Board is invalid since the Board, in issuing its decision, violated its own regulation, 25 Pa. Code §21.86(a), which reads in pertinent part as follows:

(a) Hearings may be held, at the discretion of the Board, before the Board as a whole, by individual Board members sitting as hearing examiners, or by hearing examiners who are not members of the Board. Hearings held by hearing examiners not members of the Board will be decided by the Board based upon its review of the record and the examiner's proposed adjudication.

The decision was written by someone other than the hearing examiner and the Townships contend that there is "nothing in the record which indicates that the hearing examiner prepared or submitted a proposed adjudication." This allegation, however, is insufficient to overcome the prima facie presumption of the regularity of the acts of public administration officials. *Unemployment Compensation Board of Review v. Hart*, 22 Pa. Commonwealth Ct. 225, 348 A.2d 497 (1975); *Fox v. Pennsylvania Securities Commission*, 17 Pa. Commonwealth Ct. 72, 328 A.2d 573 (1974). This presumption "exists until the contrary appears." *Beacom v. Robison*, 157 Pa. Superior Ct. 515, 521, 43 A.2d 640, 643 (1945). Since the Townships have not sustained their burden of showing an irregularity, we must reject their argument.

We have considered the Townships' other arguments and find them to be meritless. Accordingly, we enter the following

---

(2) The present and possible future uses of particular waters;

. . . .

(5) The immediate and long-range economic impact upon the Commonwealth and its citizens.

506

ORDER

AND Now, this 28th day of February, 1980, the order of the Pennsylvania Environmental Hearing Board, dated May 3, 1978, except that portion requiring Mignatti Construction Co., Inc., to submit an erosion and sedimentation control plan in accordance with the provisions contained in 25 Pa. Code §102.5 (b)(1) and (2) (topographic features and soil characteristics of the project area), is hereby affirmed.

President Judge BOWMAN and Judge DISALLE did not participate in the decision in this case.